**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LESTER ELIAZER ORELLANA UMANZOR | **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |
| *Plaintiff,* | |
| v. | *Case No. 24-7956* <br> *(to be filled in by the Clerk's Office)* <br> *Jury Trial: ☐ Yes ☐ No (check one)* |
| ALEJANDRO MAYORKAS, Secretary U.S. Citizenship and Immigration Services (USCIS); UR M. JADDOU, Director U.S. Department of Homeland Security; ANDREA QUARANTILLO, New York District Director, U.S. Citizenship and Immigration Services; MICHAEL BORGEN, Director USCIS New York Field Office | |
| *Defendants* | |

<u>**PLAINTIFF'S COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**</u>

# Table of Contents

Table of Authorities ...................................................................................................... 4

INTRODUCTION ......................................................................................................... 10

STATEMENT OF JURISDICTION ............................................................................. 10

I.     THIS COURT HAS SUBJECT MATTER JURISDICTION OVER FEDERAL QUESTIONS ............................................................................................................. 10

II.    THIS COURT HAS JURISDICTION OVER APPEALS ...................................... 11

III.   THE JURISDICTION STRIPPING PROVISION IN SECTION 1252 DOES NOT APPLY TO CASES OUTSIDE OF REMOVAL PROCEEDINGS ................................... 11

IV.   THE FEDERAL COURT HAS JURISDICTION OVER ALL CONSTITUTIONAL QUESTIONS, ALL LEGAL QUESTIONS, ALL MIXED QUESTIONS OF LAW AND FACT, AND SOME QUESTIONS OF FACT .............................................................. 12

V.    UNDER PATEL, IN SOME CIRCUMSTANCES, FEDERAL COURTS DO NOT HAVE JURISDICTION OVER PURE FACTUAL QUESTIONS ................................... 12

VI.   COURTS HAVE DISCRETION TO REVIEW LEGAL DETERMINATIONS OF ELIGIBIILTY FOR A BENEFIT, RATHER THAN THE CONFERENCE OF THE BENEFIT ...................................................................................................................... 13

VII.  COURTS HAVE JURISIDICTION TO REVIEW THE NIW BECAUSE IT IS NOT INTENDED TO BE PURELY DISCRETIONARY, AND IS A MEANINGFUL STANDARD TO REVIEW ...................................................................................................... 16

    1.    Statutory language clearly indicates that the NIW is not intended to be purely discretionary because other statutes specifically state "discretion" while the NIW does not ...................................................................................................................... 16

    2.    The word "shall" and "may" does not mean this is a purely discretionary decision.... 21

    3.    The NIW is a meaningful standard that courts may review ..................................... 22

VIII. SECTION 1252(B) DOES NOT APPLY TO AGENCY DECISIONS OUTSIDE OF THE REMOVAL CONTEXT, NOR DID CONGRESS INTEND IT TO ........................... 26

    1.    1252(b) only applies to removal proceedings and nothing else. ............................... 26

    2.    Legislative history shows that § 1252(a)(2)(B) is confined to removal cases. ........... 30

2

CAUSE OF ACTION ................................................................................................... 35

VENUE ...................................................................................................................... 36

OTHER ADEQUATE ADMINISTRATIVE REMEDIES ................................... 37

PARTIES .................................................................................................................... 39

STATEMENT OF THE ISSUES ............................................................................. 40

STATEMENT OF THE CASE ................................................................................. 40

   I.       FACTUAL AND PROCEDURAL BACKGROUND ........................... 40

STANDARD OF REVIEW ....................................................................................... 41

ARGUMENT .............................................................................................................. 42

   I.       PLAINTIFF SHOULD HAVE BEEN GRANTED THE NIW ............... 42

     1.    Statement of the National Interest Waiver Eligibility ............................. 42

     2.    Whether the Beneficiary is Well-Positioned to Advance The Proposed Endeavor ..... 47

     3.    Conclusion, Plaintiff should have been granted the NIW ...................... 53

   II.     PLAINTIFF'S CONSTITUTIONAL DUE PROCESS RIGHTS WERE VIOLATED ........................................................................................................... 54

   III.    AAO MISAPPLIED THE LAW AND PROCEDURES ....................... 58

   IV.    AAO DECISION WAS INCONSISTENT AND ARBITRARY ............ 62

   V.     CONCLUSION: THIS COURT HAS JURISDICTION TO REVIEW .................... 65

CONCLUSION ........................................................................................................... 65

**Table of Authorities**

**Cases**

*Abbott Lab'ys v. Gardner,* 387 U.S. 13 (1967) ..................................................... 33

*Abdelhamid v. Ilchert,* 774 F.2d 1447 (9th Cir.1985)........................................... 23

*Alom v. Whitaker*, 910 F.3d 708 (2d Cir. 2018) .................................................. 58

*ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059 (9th Cir. 2015) .............................. 22, 23

*Bailey v. United States*, 516 U.S. 137 (1995)....................................................... 20

*Barco-Sandoval v.Gonzales*, 516 F.3d 35 (2d Cir. 2007) ................................. 64

*Bennett v. Spear*, 520 U.S. 154, 117 S. Ct. 1154 (1997) ..................................... 35

*Bowen v Massachusetts*, 487 U.S. 879 (1988) ..................................................... 36

*Bowen v. Mich. Acad. Of Fam. Physicians,* 476 U.S. 667 (1986) ........................ 33

*Brezler v. Mills*, 220 F. Supp. 3d 303 (E.D.N.Y. 2016) ....................................... 36

*Burger v. McElroy,* No. 97 Civ. 8775, 1999 WL 203353 (S.D.N.Y. Apr. 12, 1999) ............... 35

*Cao He Lin v. Dep't of Justice,* 428 F.3d 391 (2d Cir. 2005)................................ 64

*Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833 (1986) ................... 34

*Davidson v Glickman*, 169 F.3d 996 (5th Cir. 1999) ........................................... 41

*Davis v. Mich. Dep't of Treasury*, 489 U.S. 803 (1989) ........................... 26, 29, 30

*De Martinez v. Lamagno,* 515 U.S. 417 (1995) ................................................... 22

*Dep't of Corr. v. Thompson*, 490 U.S. 454 (1989)................................................ 56

*Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959 (2020) ...................... 55

*Doe v United States*, 821 F.2d 694 (D.C. Cir. 1987).............................................. 41

*Doe v. Sessions*, 886 F.3d 203 (2d Cir. 2018)............................................... 61, 64

*Don't Waste Ariz. Inc. v. Hickman's Egg Ranch Inc.*, No. CV-16-03319-PHX-GMS (D. Ariz. Dec. 19, 2018) ................................................................................................. 20

*Evitts v. Lucey*, 469 U.S. 387 (1985).................................................................... 56

*Fong Haw Tan v. Phelan,* 333 U.S. 6 (1948)........................................................ 34

4

*Fong Yue Ting v. United States*, 149 U.S. 698 (1893) ........................................................56

*Francis v. Immigration Naturalization Serv*, 532 F.2d 268 (2d Cir. 1976) ...........................29

*Freire v. Holder*, 647 F.3d 67 (2d Cir. 2011) ...................................................................63

*Gardner v. Florida*, 430 U.S. 349 (1977) ........................................................................55

*Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062 (2020) ...................................................... 13, 33

*Heckler v. Chaney*, 470 U.S. 821 (1985) ........................................................................36

*Immigration & Naturalization Service v St. Cyr*, 533 U.S. 289 (2001) ................................29

*In re Dhanasar*, 26 I&N Dec. 884 (B.I.A. 2016) ........................................................passim

*Indradjaja v. Holder*, 737 F.3d 212 (2d Cir. 2013).................................................... 57, 62

*INS v. St. Cyr*, 533 U.S. 289 (2001) ...................................................................... 15, 31, 55

*INS v. St. Cyr*, No. 00-767, 2001 WL 703922 (U.S. June 25, 2001) ............................... 11, 26

*Ivanishvili v. U.S. Dep't of Justice*, 433 F.3d 332 (2d Cir. 2006) ..........................................63

*Jama v. Immigration & Customs Enf't* , 543 U.S. 335,  S.Ct. 694,  L.Ed.2d 708 (2005) ...........21

*Jourbina v. Holder*, 532 F. App'x 1, 2 (2d Cir. 2013).........................................................64

*Keene Corp. v. United States*, 508 U.S. 200  (1993) ..........................................................20

*Kucana v Holder,* 558 U.S. 233 (2010) ...........................................................................41

*Kucana v. Holder,* 558 U.S. 233 (2010) .................................................................. 22, 29, 34

Kwong Hai Chew v. Colding, 344 U.S. 590, n.5 (1953) ......................................................54

*Li Zu Guan v. INS*, 453 F.3d 129 (2d Cir. 2006) ........................................................ 57, 62

*Malets v. Garland*, No. 19-4216 (2d Cir. 2023) ................................................................56

*Mart v. Beebe,* 94 F. Supp.2d 1120 (D. Or. 2000) ...................................................... 32, 35

*Matter of Andazola*, 23 I&N Dec. 319 (BIA 2002) ............................................................23

*Matter of Arai* , 13 I. & N. Dec. 494  (BIA 1970) .............................................................15

*Matter of Kasinga, 21 I&N* Dec. 357, 365 (BIA 1996) ......................................................58

*Matter of Monreal*, 23 I&N Dec. 56 (BIA 2001) ..............................................................23

*Matter of Recinas* 23 I&N Dec. 467 (BIA 2002) ..............................................................23

5

*Matter of V-K-*, 24 I&N Dec. 500 (BIA 2008) .................................................... 60

*Matter of Z-Z-O-*, 26 I&N Dec. 586 (BIA 2015) ................................................ 60

*McNary v. Haitian Refugee Ctr., Inc.,* 498 U.S. 479 (1991) ..................................... 10, 33, 34

*Morrissey v. Brewer*, 408 U.S. 471 (1972) ......................................................... 56

*Myrie v. Att'y Gen.*, 855 F.3d 509 (3d Cir. 2017) ............................................... 60

*Olim v. Wakinekona*, 461 U.S. 238 (1983) ......................................................... 56

*Patel v. Garland*, 142 S. Ct. 1614 (2022) .................................................... passim

*Patel v. Jaddou*, Civil Action 4:22-cv-11128-IT (D. Mass. Sep. 27, 2023) ........................... 22

*Paucar v. Garland*, No. 21-6043 (2d Cir. 2023) ..................................................... 61, 62, 64

*Perez v. Wolf*, 943 F.3d 853 (9th Cir. 2019) ....................................................... 23

*Poradisova v. Gonzales*, 420 F.3d 70 (2d Cir. 2005) ............................................... 57, 62, 64

*Poursina v. U.S. Citizenship & Immigration Servs.*, 936 F.3d 868 (9th Cir. 2019) ............ 19, 21

*Pullman-Standard v. Swint*, 456 U.S. 273, n.19 (1982) ........................................... 59

*Reno v. Cath. Soc. Servs. Inc.,* 509 U.S. 43 (1993) ............................................... 34

*Rubin v. Miller*, 478 F. Supp. 499 (S.D.N.Y. 2020) ............................................... 45

*Rubio Hernandez v. USCIS*, 643 F. Supp. 3d 1193 (W.D. Wash. 2022) ................................ 30

*Rudisill v. McDonough*, 601 U.S. 294 (2024) ....................................................... 11, 26

*Russello v. United States*, 464 U. S. 16 (1983) ................................................... 20

*Sanchez v. Mayorkas*, 141 S. Ct. 1809 (2021) ..................................................... 13

*Scripps Coll. v. Jaddou*, 4:23CV3075 (D. Neb. Dec. 12, 2023) ..................................... 54

*Seafarers Intl. Union v. Coast Guard*, 736 F.2d 19 (2d Cir. 1984) ................................ 35

*Shanti, Inc. v. Reno*, 36 F. Supp.2d 1154 (D. Minn 1999) ......................................... 32, 35

*Shaughnessy v. Pedreiro*, 349 U.S. 48 (1955) ..................................................... 35

*Shunfu Li v. Mukasey*, 529 F.3d 141 (2d Cir. 2008) ............................................... 57, 62

*Spencer Enterprises, Inc. v. U.S.*, 345 F.3d 683 (9th Cir. 2003) ................................. 20

*Spencer Enters., Inc. v. United States,* 345 F.3d 683 (9th Cir.2003) ............................. 23

6

*Stern v. Marshall*, 564 U.S. 462 (2011) ................................................................. 34

*Talwar v. U.S. Immigration and Naturalization*, 00 Civ. 12.66 (JSM) (S.D.N.Y. July 9, 2001) 11, 26, 32, 35

*Tian-Yong Chen v. INS*, 359 F.3d 121 (2d Cir. 2004) ................................................... 57, 62

*Townsend v. Burke*, 334 U.S. 736 (1948) ................................................................. 56

*Trainmen v. Baltimore Ohio R. Co.*, 331 U.S. 519, 67 S.Ct. 1387 (1947) ...................... 11, 26

*United States v. First City Nat'l Bank*, 386 U.S. 361 (1967) ................................................. 58

*United States v. Nourse*, 34 U.S. 8 (1835) ............................................................. 34

*United Statesex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) ....................................... 55

*Valerio-Ramirez v. Sessions*, 882 F.3d 289 (1st Cir. 2018) ............................................... 21

*Wagner v National Transportation Safety Board*, 86 F.3d 928 (9th Cir. 1996) ...................... 41

*Wallace v. Gonzales*, 463 F.3d 135 (2d Cir. 2006) ............................................................. 28

*Webster v. Doe*, 486 U.S. 592 (1988) ....................................................................... 25

*Wellness Int'l Network, Ltd. v. Sharif,* 575 U.S. 665 (2015) ............................................... 34

*Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457 (2001) .................................................. 32

*Wilkinson v Garland* No. 22-666 (U.S. Mar. 19, 2024) ........................................... 13, 14, 24

*Wilkinson v. Garland*, 601 U.S. 209 (2024) ............................................................. 29

*Wilkinson v. Garland*, No. 22-666 (Mar. 19, 2024) ....................................................... 24

*Wu Lin v. Lynch*, 813 F.3d 122 (2d Cir. 2016) ......................................................... 58

Yamataya v. Fisher, 189 U.S. 86 (1903) ................................................................. 55

*Yan Chen v. Gonzales*, 417 F.3d 268 (2d Cir. 2005) ................................................... 57, 62, 64

*Yang v. Board of Immigration Appeals*, 440 F.3d 72 (2d Cir. 2006) ................................... 64

Yick Wo v. Hopkins, 118 U.S. 356 (1886) ................................................................. 54

*Zadvydas v. Davis*, 533 U.S. 678 (2001) ................................................................. 55

*Zhi Yun Gao v. Mukasey*, 508 F.3d 86 (2d Cir. 2007) ................................................... 57, 62

**Statutes**

28 U.S.C. § 1331 ................................................................................ 10, 11

28 U.S.C. § 2201 ................................................................................ 11

28 U.S.C. §1291 ................................................................................ 11

28 U.S.C. §1331 ................................................................................ 10

28 U.S.C. §1651 ................................................................................ 11

8 C.F.R. § 1003.1(d)(3)(ii) ................................................................ 60

8 C.F.R. § 204.5(k)(1)-(3) ............................................................ 59, 65

8 U.S.C. § 1182 ............................................................................ 17, 18

8 U.S.C. § 1158(a)(3) ........................................................................ 19

8 U.S.C. § 1160(e) ............................................................................ 11

8 U.S.C. § 1182 ................................................................................ 17

8 U.S.C. § 1225(b)(1)(A)(iii)(I) ........................................................ 16

8 U.S.C. § 1252(a)(2)(B) .................................................................. 30

8 U.S.C. § 1252(a)(2)(B)(ii) ............................................................. 27

8 U.S.C. §1252(a)(2)(B)(ii) ............................................................. 13

8 U.S.C. §1252(a)(2)(D) ................................................................... 12

8 U.S.C. §1252(a)(4) ........................................................................ 12

Administrative Procedure Act (APA), 5 U.S.C §701 et. seq. ............... 41

INA 203 (8 U.S.C. §1153. Allocation of immigrant visas) ................. 19

INA 207(c)(1) (8 U.S.C. § 1157) ....................................................... 16

INA 212(a)(3)(D)(iv) (8 U.S.C. § 1182) ........................................... 17

INA 212(d) (8 U.S.C. § 1182) .......................................................... 17

INA 212(d)(3)(A) (8 U.S.C. § 1182) ................................................. 17

INS 212(a)(9)(B) (8 U.S.C. § 1182) .................................................. 17

REAL ID Act of 2005, Pub. L. No. 109-13, § 101(f), 119 Stat. 302 ...... 31

**Other Authorities**

*Flight disruption: the impact on the economy and environment*, Megan Gaen, Sept. 23, 2023 .. 46

*Focus: United Airlines grapples with pilots avoiding the captain's chair*, Rajesh Kumar Singh, July 18, 2023, Reuters ............................................................................. 45

Gerald L. Neuman, *Discretionary Deportation*, 20 GEO. IMMIGR. L.J. 611 (2006) ................. 55

*In numbers: The economic impact of flight disruptions*, Jacqueline Junginer, Oct. 6, 2023 ....... 46

USCIS Policy Manual Chapter 5, available at, https://www.uscis.gov/policy-manual/volume-6-part-f-chapter-5 .............................................................................................. 25

USCIS Policy Manual, Home Policy Manual ................................................................. 63

**Constitutional Provisions**

U.S. Const. Amend. 5 ...................................................................................... 54

U.S. Const. art. 3 .......................................................................................... 34

**INTRODUCTION**

This is a case in which the USCIS determined that Plaintiff Lester Eliazer Orellana Umanzor ("Plaintiff" or "Mr. Umanzor") met the requirement of a member of the professions holding an advanced degree for an EB2-NIW ("NIW"), but did not meet other requirements. However, upon appealing the USCIS's denial decision, Plaintiff was found to not meet the requirement of being a member of the professions holding an advanced degree, despite his bachelor's, master's, a federal aviation license ("FAA") as an airline transport pilot and another FAA license as a private pilot, as well as years of experience as a pilot.

Plaintiff argues that this inconsistent decision was erroneous; did not follow legal procedures; and did not use the correct standard of proof. These are constitutional and legal questions that are within the jurisdiction of the federal court.

**STATEMENT OF JURISDICTION**

**I.  THIS COURT HAS SUBJECT MATTER JURISDICTION OVER FEDERAL QUESTIONS**

1. This is a civil action brought pursuant to 28 U.S.C. §1331 which provides that "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

2. Courts have frequently used §1331 to allow "federal question" jurisdiction in matters involving agency decisions, where no statute expressly removes such jurisdiction; *see McNary v. Haitian Refugee Ctr., Inc.,* 498 U.S. 479 (1991). There, a collateral challenge to the constitutionality of the policies of the former Immigration and Naturalization Service ("INS") in adjudicating an amnesty program was not barred by a provision in the statute which prevented judicial review of individual applications: "Because Appellants' action does not seek review on

the merits of a denial of a particular application, the District Court's general federal question jurisdiction under 28 U.S.C. § 1331 to hear this action remains unimpaired by § 210(e)[1]". Jurisdiction is alternatively conferred by 28 U.S.C. §1651 which permits all Courts created by Acts of Congress to issue "all writs necessary or appropriate" as well as by 28 U.S.C. § 2201 which states that "any court of the United States…may declare the rights and other legal relations of any interested party seeking such declaration…"

## II.  THIS COURT HAS JURISDICTION OVER APPEALS

3. 28 U.S.C. §1291 confers authority on the Courts of Appeals to hear appeals of "all final decisions"of the District Courts. In the present appeal the decision of the District Court was handed down on February 27th, 2024 and on March, 5, 2024, Plaintiff timely appealed the district court's dismissal.

## III. THE JURISDICTION STRIPPING PROVISION IN SECTION 1252 DOES NOT APPLY TO CASES OUTSIDE OF REMOVAL PROCEEDINGS

4. The plain language of § 1252 (b) is clear, it does not apply to anything but removal proceedings. The title of the section is "Judicial Review of *Orders of Removal*" and only applies to orders of removal and "section headings . . . 'supply cues' as to what Congress intended." *Rudisill v. McDonough*, 601 U.S. 294, 309 (2024) (alteration in the original) (citation omitted).

5. This was confirmed by the court in *Talwar v. U.S. Immigration and Naturalization*, 00 Civ. 12.66 (JSM), at *1 (S.D.N.Y. July 9, 2001) ("Section 1252 is entitled 'Judicial review of orders of removal,' suggesting that the provision only limits judicial review of discretionary decisions in the context of removal proceedings. While it is true that the heading of a section cannot limit the plain meaning of the text, it is also true that headings serve as tools in resolving

---

[1] The full text of Section 210(e) of the INA is set forth in 8 U.S.C. § 1160(e)

doubt about ambiguities in a statute.") (*Citing INS v. St. Cyr*, No. 00-767, 2001 WL 703922, *9 (U.S. June 25, 2001); *Trainmen v. Baltimore Ohio R. Co.*, 331 U.S. 519, 528-29, 67 S.Ct. 1387, 1391-92 (1947)).)

## IV. THE FEDERAL COURT HAS JURISDICTION OVER ALL CONSTITUTIONAL QUESTIONS, ALL LEGAL QUESTIONS, ALL MIXED QUESTIONS OF LAW AND FACT, AND SOME QUESTIONS OF FACT

6. Alternatively, should the court find that this Section does apply to cases outside of removal proceedings, 8 U.S.C. §1252(a)(2)(D) grants the courts jurisdiction to hear "constitutional claims" or "questions of law." Although some courts have construed this subparagraph to restrict judicial review only to those matters which come directly to the court by a petition for review (of a removal order) the plain language of the statute says only that subparagraphs B and C shall not be interpreted as "precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals." It does not state that review of such claims can *only* be pursued via a petition for review and by no other means. Contrast this with the adjacent 8 U.S.C. §1252(a)(4), (Claims under the United Nations Convention) which states unequivocally that "a petition for review filed with an appropriate court of appeals in accordance with this section *shall be the sole and exclusive means for judicial review* of any cause or claim under the United Nations Convention" (emphasis added). This court therefore has jurisdiction to review the USCIS's application of the NIW legal framework to the Plaintiff's application as a "question of law."

## V. UNDER PATEL, IN SOME CIRCUMSTANCES, FEDERAL COURTS DO NOT HAVE JURISDICTION OVER PURE FACTUAL QUESTIONS

7. Although 8 U.S.C. §1252(a)(2)(B)(ii) restricts the jurisdiction of federal courts to review certain discretionary agency decisions, only those decisions "specified…to be in the discretion of the Attorney General or the Secretary of Homeland Security" are removed from the courts' jurisdiction. The decision to grant, deny, or revoke a NIW is not so specified, and even though some courts have inferred that a NIW adjudication is discretionary there is no statutory barrier to this court assuming subject matter jurisdiction to review that decision for legal error.

8. In the alternative, should this court find that the adjudication of a NIW request is a discretionary decision counsel believes that in light of the recent Supreme Court decision in *Wilkinson v Garland* No. 22-666 (U.S. Mar. 19, 2024) federal courts retain jurisdiction to review "mixed" questions of law and fact or "the application of a legal standard to undisputed or established facts" which necessarily precedes the "second step" discretionary element of any immigration-related adjudication. Here, the agency evaluated the Plaintiff's work experience and educational achievements and applied the legal standard required by the regulations and case law of the Administrative Appeals Office ("AAO") to determine if he qualified for a NIW. That legal determination is subject to judicial review.[2]

## VI. COURTS HAVE DISCRETION TO REVIEW LEGAL DETERMINATIONS OF ELIGIBIILTY FOR A BENEFIT, RATHER THAN THE CONFERENCE OF THE BENEFIT

9. The Supreme Court has made a distinction between the two parts of an immigration benefit adjudication: first, the petitioner's eligibility is established, and second, the decision whether to grant relief under the statute. The Supreme Court has specifically reviewed questions

---

[2]*See Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1067 (2020) (holding that the federal courts possess jurisdiction to evaluate mixed questions of law and fact).

of law as to the first step – the determination of eligibility for a benefit. In *Sanchez v. Mayorkas*, 141 S. Ct. 1809, 1812 (2021) the court granted certiorari to determine whether a petitioner was eligible at all for an AOS, determining that a prior benefit of Temporary Protected Status ("TPS") does not then make one eligible under the first step for an AOS. 141 S. Ct. 1809, 1812-13 (2021) ("We granted certiorari, 592 U. S. ——, 141 S.Ct. 973, 208 L.Ed.2d 509 (2021), to resolve a Circuit split over whether a TPS recipient who entered the country unlawfully can still become an LPR . . . the conferral of TPS does not make an unlawful entrant (like Sanchez) eligible under § 1255 for adjustment to LPR status.").Notably, Sanchez did not challenge his case via a Petition for Review, but rather, through the District Court, and thus the Supreme Court has found that the statute does not say that Petitions for Review are the sole mechanism for seeking review. *See, generally*, *Id.***Error! Bookmark not defined.** It is important to note here that the Supreme Court did not even consider the jurisdictional question, taking for granted that courts have jurisdiction to review issues of law while determining eligibility for a benefit as part of step one. *See, generally, Sanchez. See also, Wilkinson at* \*11 ("The hardship determination in this case was **not discretionary**. Because the IJ held that M.'s hardship did not satisfy the statutory eligibility criteria, he never reached the second step and **exercised his unreviewable discretion to cancel or decline** to cancel Wilkinson's removal. The Third Circuit therefore erred in holding that it lacked jurisdiction to review the IJ's determination in this case."); *Id.* at \*16 ("Under *Patel*, of course, a court is still without jurisdiction to review a **factual question** raised in an application for discretionary relief. As in *Patel*, that would include the IJ's underlying factual determination that Wilkinson was credible, or the finding that M. had a serious medical condition. When an IJ weighs those found facts and applies the "exceptional and

extremely unusual hardship" standard, however, the result is a mixed question of law and fact that is reviewable under §1252(a)(2)(D).")

10. This distinction was brought up in dissent in Patel, but later confirmed by the Supreme Court in *Wilkinson v. Garland*, No. 22-666, at *7 (Mar. 19, 2024) ("After determining whether a noncitizen meets these criteria, an IJ proceeds to **step two and decides whether to exercise discretion** to cancel the order of removal in a particular case.")

11. In differentiating between these two parts of the process, the court made it clear that only the second step might be discretionary:

> "Recall that requests for adjustment of status **involve a two-step process**. First, the Attorney General, acting through the BIA, **must determine whether an individual is statutorily eligible for adjustment of status**. See 8 U.S.C. §§ 1255(a), (i). If so, the Attorney General may proceed to the second step and decide whether to grant an adjustment request 'in his discretion.' §§ 1255(a), (i)(2)(A)."

12. *Patel v. Garland*, 142 S. Ct. 1614, 1630-1631 (2022) ("Undoubtedly, the exception in § 1252(a)(2)(B)(i) creates a special rule insulating from judicial review the second and purely discretionary decision. But nothing in it disturbs the general rule that courts may entertain challenges to the BIA's factual findings and legal analysis associated with its first-step eligibility determination.")

13. In fact, this first part can then be sub-divided into the factual and legal determinations. Factual determinations under *Patel* are not reviewable, even if they occur in the first part while determining eligibility. However, the legal determinations always are. In other words, while *Patel* bars review under (B)(i) of decisions under the first step which are purely factual (as well as the "purely discretionary" decision in the second step whether to grant relief in their discretion), it **still does not bar** review of the eligibility determination in the first step as long as they are not purely factual – if they are legal questions, or mixed questions of law and fact, they

are still reviewable – because that determination is not the "actual granting of relief;" "mere eligibility" for relief does not "automatically result in a grant of the application." *Matter of Arai* , 13 I. & N. Dec. 494, 495 (BIA 1970). Instead, "the actual granting of relief ... is in all cases a matter of grace." *INS v. St. Cyr* , 533 U.S. at 308, (internal quotation marks omitted).

## VII.     COURTS HAVE JURISIDICTION TO REVIEW THE NIW BECAUSE IT IS NOT INTENDED TO BE PURELY DISCRETIONARY, AND IS A MEANINGFUL STANDARD TO REVIEW

**1. Statutory language clearly indicates that the NIW is not intended to be purely discretionary because other statutes specifically state "discretion" while the NIW does not**

14. The plain statutory language of the NIW is not specified as discretionary, while other sections of the same statute are. Accordingly, the NIW itself is not intended to be a discretionary decision and a decision that is not statutorily considered discretionary is thus reviewable.

15. The statutory language is clear: the NIW is not a decision based on discretion while many other parts of the statute explicitly state that such decisions are of the "sole and unreviewable discretion" of the attorney general, which is not to be reviewable by the courts, including (emphasis below added):

- Expedited Removal: 8 U.S.C.§ 1225(b)(1)(A)(iii)(I) ("Such designation shall be in the **sole and unreviewable discretion** of the Attorney General and may be modified at any time.")

- Admission of Refugees: INA 207(c)(1) (8 U.S.C.§ 1157) ("the Attorney General may, **in the Attorney General's discretion** and pursuant to such regulations as the Attorney General may prescribe, admit any refugee…")

- Members of Totalitarian Parties: INA 212(a)(3)(D)(iv) (8 U.S.C.§ 1182)("The Attorney General may, **in the Attorney General's discretion**, waive the application of clause (i)…")

- Three and Ten Year Bar waivers in INS 212(a)(9)(B) (8 U.S.C.§ 1182) ("The Attorney General has **sole discretion** to waive clause (i)…")

  - Noting further that "**No court shall have jurisdiction to review a decision or action by the Attorney General regarding a waiver under this clause**." *Id.*

- Exceptions to Inadmissibility for Government Witnesses: INA 212(d) (8 U.S.C. § 1182) ("The Attorney General, **in the Attorney General's discretion**, may waive the application of subsection (a) . . .")

- Waiver for nonimmigrant visa application, INA 212(d)(3)(A) (8 U.S.C. § 1182) ("may be admitted into the United States temporarily as a nonimmigrant **in the discretion of the Attorney General . . .** may be admitted into the United States temporarily as a nonimmigrant **in the discretion of the Attorney General**.")

- Parole Authority ("(5)(A) (8 U.S.C.§ 1182) The Attorney General may, except as provided in subparagraph (B) or in section 1184(f) of this title, **in his discretion** parole into the United States temporarily . . .")

- T VISA WAIVER (B) (8 U.S.C.§ 1182) ("…the Secretary of Homeland Security, **in the Attorney General's discretion**, may waive the application…")

- INA 212(g) (8 U.S.C.§ 1182): Health Related Grounds Waiver ("…as the Attorney General, in the **discretion of the Attorney General** after consultation with the Secretary of Health and Human Services, may by regulation prescribe…")

- 212(h) (8 U.S.C.§ 1182): waiver for crimes: (**h) Waiver of subsection (a)(2)(A)(i)(I), (II), (B), (D), and (E) ("**The Attorney General may, **in his discretion**, waive the application of subparagraphs (A)(i)(I), (B), (D), and (E) of subsection (a)(2) and subparagraph (A)(i)(II) . . . ")
  - Noting, further, that **"No court shall have jurisdiction to review a decision of the Attorney General** to grant or deny a waiver under this subsection." *Id.*
- *Id.* 212(i) waiver for fraud (1) ("The Attorney General may, **in the discretion of the Attorney General**, waive the application of clause (i) of subsection (a)(6)(C) in the case of . . .")
  - Noting, further, that "(2) **No court shall have jurisdiction to review a decision or action of the Attorney General regarding a waiver under paragraph (1)**." *Id.*
- *Id.* 212(k) waiver of inadmissibility **k) ("Attorney General's discretion to admit otherwise inadmissible aliens who possess immigrant visas . . in the discretion of the Attorney General** if the Attorney General is satisfied…")
- *Id.* Terrorist Bar waiver (B)(i) ("The Secretary of State, after consultation with the Attorney General and the Secretary of Homeland Security, or the Secretary of Homeland Security, after consultation with the Secretary of State and the Attorney General, may determine in such Secretary's **sole unreviewable discretion** …")
- Id. Waiver of Terrorist Bar for opposition to apartheid in South Africa: (a) ("The Secretary of State, after consultation with the Attorney General and the Secretary of Homeland Security, or the Secretary of Homeland Security, after consultation with the

Secretary of State and the Attorney General, may determine, **in such Secretary's sole and unreviewable discretion**…")

- *Id.* Also for Kurdistan Democratic Party members (2) ("The Secretary of State, after consultation with the Secretary of Homeland Security and the Attorney General, or the Secretary of Homeland Security, after consultation with the Secretary of State and the Attorney General, may suspend the application of paragraph (1) for either or both of the groups referred to in paragraph (1) in such Secretary's **sole and unreviewable discretion.")**

- *Id.* Then, a waiver of that, if the attorney general still finds they are a risk:

  - "(3) Exception.-Neither paragraph (1) nor paragraph (2) shall apply if the Secretary of State or the Secretary of Homeland Security (or a designee of one of such Secretaries) determine in their **sole unreviewable discretion** that such alien poses a threat to the safety and security of the United States"

- *Id.* Also for Rwandan Patriotic Party members (A) ("…in the **sole and unreviewable discretion** of such applicable Secretary.")

- 8 U.S.C.1158(a)(3): Restrictions on court review of certain bars to asylum, like Safe Third Country and One Year Filing Rule ("**No court shall have jurisdiction to review** any determination of the Attorney General under paragraph")

16. Compare the above with the language of the NIW, which has no such discretionary language:

"Subject to clause (ii), the Attorney General may, when the Attorney General deems it to be in the national interest, waive the requirements of subparagraph (A) that an alien's services in the sciences, arts, professions, or business be sought by an employer in the United States."

INA 203 (8 U.S.C. § 1153. Allocation of immigrant visas)

17. Despite this language, courts have incongruously held, because of the words "may" and "deems," that the statute is discretionary, *see, e.g, Poursina v. U.S. Citizenship & Immigration Servs.*, 936 F.3d 868, 871 (9th Cir. 2019) ("Here, Congress has 'specified' that the issuance of national-interest waivers is 'discretionary.' Once again, the statute states that 'the Attorney General *may*, when the Attorney General *deems* it to be in the national interest, waive the requirement[ ] ... that an alien's services in the sciences, arts, professions, or business be sought by an employer in the United States.' 8 U.S.C. § 1153(b)(2)(B)(i) (emphasis added). Congress's use of 'may'—rather than 'must' or 'shall'—brings along the usual presumption of discretion.")

18. But this contradicts the clear statutory language given the amount of times that Congress has explicitly used the words "discretion" when referring to that very discretion bestowed upon the attorney general by them, we cannot simply assume Congress meant to deprive a statute of Federal review unless it 1) explicitly said so, or 2) explicitly made a statute purely discretionary. *See, e.g, Bailey v. United States*, 516 U.S. 137, 146 (1995) ("distinction in one provision between **'used' and 'intended to be used'** creates implication that related provision's reliance on **'use' alone refers to actual and not intended use**"); *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) ("'[W]here Congress includes particular language in one section of a statute but omits it in another ... , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion") (citing *Russello v. United States*, 464 U. S. 16, 23 (1983)); *see, also, Spencer Enterprises, Inc. v. U.S.*, 345 F.3d 683 (9th Cir. 2003) ("If the authority for a particular act is in the discretion of the Attorney General, therefore, the right or power to act is entirely within his or her judgment or conscience. Such acts are matters of **pure discretion**, rather than discretion **guided by legal**

standards.”); *Don't Waste Ariz. Inc. v. Hickman's Egg Ranch Inc.*, No. CV-16-03319-PHX-GMS, at \*7 (D. Ariz. Dec. 19, 2018) (“‘[W]here Congress includes particular language in one section of a statute **but omits it in another** . . . , it is generally presumed that Congress acts **intentionally and purposely in the disparate inclusion or exclusion**.”) (internal citation and quotation marks omitted).

19. In section 203 alone, the word “discretion” appears around ten times, most of which are related to the EB-5. If there was meant to be discretion in the NIW, they would have used the word “discretion.”

20. As stated in *Valerio-Ramirez v. Sessions*, 882 F.3d 289, 294 (1st Cir. 2018):

“we side with the majority of other circuits that have held that, under *Kucana*, a statutory provision **must expressly and specifically vest discretion** in the Attorney General (for example, **by explicitly using the words ‘in the discretion of the Attorney General**’) rather than simply leave to the executive branch certain decisions and determinations that happen to be discretionary in nature.”
(emphasis added)

21. The statutory language, instead, indicates that if the officer finds someone eligible by meeting the criteria for the visa, for example, the EB-1 Extraordinary Ability visa, then there is no discretion at all at step two but that the officer wants the attorney general to grant the visa, but not that they must grant the visa.

**2.  The word “shall” and “may” does not mean this is a purely discretionary decision**

22. The EB-1 statute contains a “shall” and that leads some courts to automatically conclude that “may” in this statute means it is discretionary.[3] This is not correct reasoning;

---

[3] *Poursina v. U.S. Citizenship & Immigration Servs.*, 936 F.3d 868, 871 (9th Cir. 2019) (“Congress’s use of ‘may’—rather than ‘must’ or ‘shall’—brings along the usual presumption of discretion. *See Jama v. Immigration & Customs Enf’t* , 543 U.S. 335, 346, 125

instead, what the EB-1 statute means is that, if the officer finds that someone is eligible and meets the criteria for the EB-1 Extraordinary Ability visa, then there is no discretion at step two – they want the attorney general to grant the visa.

23. This does not mean that the attorney general must grant the EB-1 application for all applicants, that would not match the spirit of the law. It does mean, however, that they must conduct a proper legal analysis and if and only if they are deemed eligible, the attorney general must grant the visa. There is no discretion at the end. This contrast, however, does not mean that our statute is "purely discretionary", it just means that it is discretionary at step two.

24. If there were no judicial review here, there would not be judicial review of most immigration decisions, because there are very few forms of immigration relief that are mandatory. Thus this is the most reasonable, and intended, result.

## 3. The NIW is a meaningful standard that courts may review

25. There is a strong presumption of judicial reviewability which may only be rebutted if there is no meaningful standard through which to review a decision. *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1068 (9th Cir. 2015) ("We conclude that the Department failed to rebut the strong presumption of judicial reviewability because its regulations provide a 'meaningful standard' by which we can review its exercise of discretion in sanctioning ASSE"). This presumption is also emphasized in *Patel,* and *Kucana*. *Patel v. Jaddou*, Civil Action 4:22-cv-11128-IT, at *12 (D. Mass. Sep. 27, 2023) ("But when a statue is "reasonably susceptible to divergent interpretation," the court must "adopt the reading that accords with traditional

S.Ct. 694, 160 L.Ed.2d 708 (2005). Indeed, subsection (B)(i)'s use of 'may' contrasts with subsection (B)(ii), which delineates cases in which the Attorney General '*shall* grant a national interest waiver.')

understandings and basic principles: that executive determinations generally are subject to judicial review." *Kucana v. Holder,* 558 U.S. 233, 251 (2010) (quoting *De Martinez v. Lamagno,* 515 U.S. 417, 434 (1995)). "It therefore takes clear and convincing evidence to dislodge the presumption" of judicial review. *Id.* at 252 ").

26. There are various other examples of non-explicit standards that are still considered to be meaningful, and thus judicially reviewable, standards, for example:

- The U-visa standard of a "reasonable period" has been found to be meaningful enough for review.

  - *See, e.g.*, *Perez v. Wolf*, 943 F.3d 853, 861 (9th Cir. 2019) ("In several immigration cases, we have held that there are meaningful standards of review and have declined to apply § 701(a)(2)); *See, also*, *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1069 (9th Cir. 2015) (""Even where statutory language grants an agency 'unfettered discretion,' its decision may nonetheless be reviewed if regulations **or agency practice provide a 'meaningful standard** by which this court may review its exercise of discretion.' " *Spencer Enters., Inc. v. United States,* 345 F.3d 683, 688 (9th Cir.2003)"), *ASSE v. Kerry.* at 1069, ("Accordingly, we "will find jurisdiction to review allegations that an agency has abused its discretion by exceeding its legal authority or by failing to comply with its own regulations." *Abdelhamid v. Ilchert,* 774 F.2d 1447, 1450 (9th Cir.1985) (internal quotation marks omitted).")

- The standard of, "Exceptional and Extremely Unusual Hardship" is clear enough to be reviewable.

- *See, e.g., Matter of Recinas,* 23 I&N Dec. 467 (BIA 2002) ("**This case requires us to interpret the "exceptional and extremely unusual hardship" standard**"); *Matter of Monreal*, 23 I&N Dec. 56 (BIA 2001); *Matter of Andazola*, 23 I&N Dec. 319 (BIA 2002).

- This is the same with "due diligence."

  - *See, e.g., Wilkinson v. Garland*, No. 22-666, at *16 (Mar. 19, 2024) ("That application concededly requires a close examination of the facts. Yet that was also true of the **due diligence standard** in *Guerrero-Lasprilla*, which required a court to evaluate whether a noncitizen was adequately conscientious in his pursuit of a filing deadline. A mixed question that requires close engagement with the facts is still a mixed question, and it is therefore a "questio[n] of law" that is reviewable under §1252(a)(2)(D).")

27. In fact, during *Wilkinson* oral arguments, they referred to the "Due Diligence" dilemma in Guerrero Lasprilla and how the government claimed it was too nebulous, but they previously held in *Lasparilla* that apparently it was enough to constitute a legal standard, *see generally, Wilknson Oral Arguments*, available at, https://www.supremecourt.gov/oral_arguments/argument_transcripts/2023/22-666_f2ah.pdf ("MS. SANTOS: Well, Your Honor, I would make two points to that. The first point is that I think that that was essentially the government's exact argument in Guerrero-Lasprilla, that due diligence determinations **involve essentially no legal work and it's just the application of the standard to facts**, and **yet this Court still held that constitutes a question of law**.")

28. Accordingly, so too does the NIW give a meaningful standard that is amenable to review, which is even more clear after the *Wilkinson* decision. The other circuit cases that have

24

held the NIW to be discretionary did not have the benefit of *Wilkinson* to enlighten them of what can actually constitute a meaningful standard.

29. It is then true, too, that the prongs set forth by *Matter of Dhanasar* provide the Courts with more than enough guidance to meaningfully review denials. *In re Dhanasar*, 26 I&N Dec. 884, 889 (B.I.A. 2016) ("Under the new framework, and after eligibility for EB-2 classification has been established, USCIS may grant a national interest waiver if the petitioner demonstrates by a preponderance of the evidence: (1) that the foreign national's proposed endeavor has both substantial merit and national importance; (2) that the foreign national is well positioned to advance the proposed endeavor; and (3) that, on balance, it would be beneficial to the United States to waive the requirements of a job offer and thus of a labor certification. **If these three elements are satisfied, USCIS may approve the national interest waiver as a matter of discretion**.")

30. The term "national interest" is not the crucial inquiry here, it is whether there is enough guidance to make that a judicially manageable standard. Here, as in *Dhanasar*, there certainly is. There is additional guidance issued by the, *see, e.g.*, USCIS Policy Manual Chapter 5, available at, https://www.uscis.gov/policy-manual/volume-6-part-f-chapter-5. (explaining plainly the limited discretionary nature of the waiver).

31. The government often cites *Webster*, but *Webster* actually involved national interest issues for which there is no guidance to assess the decision:

> "As an initial matter, it should be noted that § 102(c) allows termination of an Agency employee whenever the Director "shall *deem* such termination **necessary or advisable in the interests of the United States**" (emphasis added), not simply when the dismissal *is* necessary or advisable to those interests. This standard fairly exudes deference to the Director, and appears to us to **foreclose the application of any meaningful judicial standard of review**. Short of permitting cross-examination of the Director concerning his views of the Nation's security and whether the discharged

employee was inimical to those interests, we see no basis on which a reviewing court could properly assess an Agency termination decision"

*Webster v. Doe*, 486 U.S. 592, 600 (1988).

32. This is not analogous to the instant case because there are no national security issues.

## VIII. SECTION 1252(B) DOES NOT APPLY TO AGENCY DECISIONS OUTSIDE OF THE REMOVAL CONTEXT, NOR DID CONGRESS INTEND IT TO

**1. 1252(b) only applies to removal proceedings and nothing else.**

33. "[A] fundamental canon of statutory construction" is "that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989); *see also Patel*, 596 U.S. at 338 (considering "§ 1252(a)(2)(B)(i)'s text and context" to ascertain the meaning of "judgment"). Courts must not "examine[] [the text] in isolation," as "statutory language cannot be construed in a vacuum." *Davis*, 489 U.S. at 809.

34. The plain language of Section 1252 (b) is clear, it does not apply to anything but removal proceedings. The title of the section is "Judicial Review of ***Orders of Removal***" and only applies to orders of removal and "section headings . . . 'supply cues' as to what Congress intended." *Rudisill v. McDonough*, 601 U.S. 294, 309 (2024) (alteration in the original) (citation omitted).

35. This was confirmed by the court in *Talwar v. U.S. Immigration and Naturalization*, 00 Civ. 12.66 (JSM), at *1 (S.D.N.Y. July 9, 2001) ("Section 1252 is entitled 'Judicial review of orders of removal,' suggesting that the provision only limits judicial review of discretionary decisions in the context of removal proceedings. While it is true that the heading of a section

cannot limit the plain meaning of the text, it is also true that headings serve as tools in resolving doubt about ambiguities in a statute.") (*Citing INS v. St. Cyr*, No. 00-767, 2001 WL 703922, *9 (U.S. June 25, 2001); *Trainmen v. Baltimore Ohio R. Co.*, 331 U.S. 519, 528-29, 67 S.Ct. 1387, 1391-92 (1947)).)

36. Note, too, that subsection 1252(a)(2)(B)(ii) is located within subsection (a), which outlines the availability and scope of judicial review for various types of removal orders. The section, as well as the subparagraphs preceding and following § 1252(a)(2)(B) similarly address removal orders:

- Paragraph (a) (1) concerns "[g]eneral *orders of removal*" in proceedings before immigration judges. *Id.* § 1252(a)(1);

- § 1252(a)(2)(A) concerns expedited *removal orders*; and

- § 1252(a)(2)(C) concerns *orders of removal* against noncitizens who have committed certain criminal offenses. *Id.* § 1252(a)(2)(A), (C); *see also Patel*, 596 U.S. at 344 (looking to subparagraph (C) in analyzing the "[c]ontext" of subparagraph (B)).


37. Subparagraph (a)(2)(D) is particularly instructive in reaffirming that subparagraph (a)(2)(B) is limited to removal cases, as (a)(2)(D) is an exception to the jurisdictional bar in (a)(2)(B). *Compare* 8 U.S.C. § 1252(a) (2)(B), *with id.* § 1252(a)(2)(D).


- Subparagraph (a)(2)(D) authorizes judicial review of "constitutional claims or questions of law raised upon a *petition for review*" notwithstanding the limitations on review found in § 1252(a)(2)(B) and (C), among others. *Id.* § 1252(a)(2) (D) (emphasis added);

- Also, a petition for review is the vehicle for "judicial review of an **order of removal** entered or issued under any provision of this chapter." *Id*. § 1252(a) (5) (emphasis added).

38. The remaining subsections of § 1252 further underscore this limitation in the section's scope:

- Subsection (b), named, "Requirements for review of orders of removal," outlines the procedure for petitions for review. *See, e.g.*, *id*. § 1252(b)(2) (designating the proper venue for petitions for review of **"completed" removal proceedings**); *id*.;

- § 1252(b)(3)(A) requires service on the Department of Homeland Security (DHS) officer in the district "in which the final **order of removal** . . . was entered"; *id.* ;

- § 1252(b)(4)(A)requires the court of appeals to "decide the petition only on the administrative record **on which the order of removal is based**";

- § 1252(b)(9), as the Supreme Court explained,"streamline[s] all challenges to a **removal order** into a single proceeding: the petition for review." *Nken v. Holder*, 556 U.S. 418, 424 (2009) (emphasis added);

- Subsection (c) concerns a "petition for review or for habeas corpus of an **order of removal,**";

- (d) discusses "[r]eview of final orders [of removal]." 8 U.S.C. § 1252(c), (d);

- (e) explains review of expedited orders of **removal**. *Id.* § 1252(e);

- (f) furnishes options for injunctive relief and stays of removal for **persons subject to detention and removal**. *Id.* § 1252(f);

- (g), generally, addresses jurisdiction over decisions "to commence [removal] proceedings, adjudicate [removal] cases, or execute removal orders." *Id.* § 1252(g).

- Furthermore, Section (B) is titled: *Denials of Discretionary Relief*. The word "relief" usually refers to relief from removal in the statute as well as common usage within the agency. See *Wallace v. Gonzales*, 463 F.3d 135, 139 (2d Cir. 2006) ("Indeed, although our research has not revealed a precedential opinion of the Board directly on point, BIA practice suggests that the Board believes juvenile offenses not counting as "convictions" under the immigration law may nonetheless be considered when determining whether an alien merits **discretionary relief**."), see also *Immigration & Naturalization Service v St. Cyr*, 533 U.S. 289, 291 (2001) ("the fact that deportation is not punishment for past crimes does not mean that the Court cannot consider an alien's reasonable reliance on the continued availability of **discretionary relief** from deportation when deciding the retroactive effect of eliminating such relief. "); see also *Francis v. Immigration Naturalization Serv*, 532 F.2d 268, 270 (2d Cir. 1976) ("Petitioner seeks a declaration from this court that he is eligible to apply to the Attorney General for **discretionary relief** under Section 212(c).").

39. In sum, the language of § 1252 demonstrates the section is directed to judicial review of removal orders and determinations underlying those removal orders. Indeed, the Supreme Court recently affirmed the section's focus on the removal context, noting that "[s]ection 1252 generally grants federal courts the power to review final orders of removal. § 1252(a)(1). It then strips courts of jurisdiction for certain categories of removal order. § 1252(a)(2)." *Wilkinson v. Garland*, 601 U.S. 209, 218 (2024). Thus, when "read in their context and with a view to their place in the overall statutory scheme," § 1252(a)(2)(B)(ii)'s restrictions on judicial review are naturally limited to the removal context. *Davis*, 489 U.S. at 809; *see also, e.g.*, *Kucana v. Holder*,

558 U.S. 233, 245–46 (2010) (instructing courts to "not look merely to a particular clause" and analyzing § 1252(a)(2)(B)'s reach and scope in light of its "statutory placement" (citation omitted)).

40. Nonetheless, some courts have relied on the "regardless" clause in § 1252(a)(2)(B) in isolation to dramatically expand the scope of the statute. As relevant here, that clause decrees that,

> except as provided in subparagraph (D), and *regardless of whether the judgment, decision, or action is made in removal proceedings*, no court shall have jurisdiction to review . . . (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in [their] discretion . . . .
> 8 U.S.C. § 1252(a)(2)(B) (emphasis added).

41. However, Congress's inclusion of the phrase "regardless of whether the judgment, decision, or action is made in removal proceedings," 8 U.S.C. § 1252(a)(2)(B), is most logically read as a reference to USCIS decisions which impact removal proceedings. Such decisions are not "made *in* removal proceedings," *id.* (emphasis added), but are nonetheless integral to the removal process as they "relat[e] to the granting of relief" from removal, *Patel*, 596 U.S. at 339 (emphasis omitted). Moreover, there are "practical reasons why, for someone in removal proceedings, Congress would prevent judicial review of ancillary agency determinations," as such persons "have various alternative administrative avenues that, if successful, could terminate the removal proceeding in their favor." *Rubio Hernandez v. USCIS*, 643 F. Supp. 3d 1193, 1202 (W.D. Wash. 2022).

42. In sum, the text of § 1252 and statutory construction tools demonstrate that § 1252(a)(2)(B) is limited to the removal context. Reading the statute otherwise simply "construe[s] [this language] in a vacuum." *Davis*, 489 U.S. at 809.

**2. Legislative history shows that § 1252(a)(2)(B) is confined to removal cases.**

43. The legislative history also demonstrates that § 1252(a)(2)(B) is limited to removal proceedings. Congress added the "regardless" clause to § 1252(a)(2)(B) in the REAL ID Act of 2005, Pub. L. No. 109-13, § 101(f), 119 Stat. 302, in a section entitled "PREVENTING TERRORISTS FROM OBTAINING ***RELIEF FROM REMOVAL***." *See id*. (emphasis added). That placement underscores Congress's focus on the removal context.

44. That the REAL ID Act was responsive to *INS v. St. Cyr*, 533 U.S. 289 (2001), similarly supports reading § 1252(a)(2)(B) as confined to removal proceedings. As recognized in *Patel*, "Congress added [§ 1252(a) (2)(D) in the REAL ID Act] after [the Court] suggested in *St. Cyr* that barring review of all legal questions ***in removal cases*** could raise a constitutional concern." 596 U.S. at 339 (emphasis added); *see also* H.R. Rep. No. 109-72, at 173–74 (2005) (Conf. Rep.). Subparagraph (D) was added to ensure circuit court review over constitutional claims and legal questions on review of a final ***removal order.***

45. The conference report detailing these changes explains that the amendments to § 1252 were animated by Congress's desire to "preclude all district court review of any issue ***raised in a removal proceeding.***" *Id*. at 173 (emphasis added). The legislative history is replete with references to judicial review of removal orders. *See id*. at 172–76; *see also, e.g.*, *id*. at 175 (clarifying the amendments "would not preclude habeas review over challenges to detention ***that are independent of challenges to removal orders***. Instead, the bill would eliminate habeas review only over challenges to removal orders." (emphasis added)).

46. Critically, Congress explained that the 2005 changes "do[] not eliminate judicial review" altogether, "but simply restore[]" it to the courts of appeals, for "all [noncitizens] who are ordered removed by an [IJ]." *Id*. at 174. It further affirmed that the section does not deprive any such noncitizen, "not even criminal [noncitizens], . . . of judicial review," and clarified that it

"would give every [noncitizen] one day in the court of appeals, satisfying constitutional concerns." *Id*. at 174–75. This underscores that Congress never intended to eliminate judicial review altogether for any noncitizen, as would be the case should the Court hold that § 1252(a)(2)(B)(ii) reaches individuals completely outside the removal context. It logically follows that Congress intended the "regardless" clause in § 1252(a)(2)(B) to be focused on the agency decisions which would impact removal proceedings. The REAL ID Act was focused on restoring and consolidating judicial review of legal questions and constitutional claims in removal proceedings. It would be quite odd to assume that Congress intended such a seismic shift— eliminating all judicial review for applications not related to removal proceedings—by tucking in the "regardless" clause in § 1252(a)(2)(B). Congress "does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001).

47. The court in Talwar, affirmed this interpretation and specifically found that Congress did not intend for 1252(b) to apply to anything but removal proceedings. *Talwar v. U.S. Immigration and Naturalization*, 00 Civ. 12.66 (JSM), at *1 (S.D.N.Y. July 9, 2001) ("The legislative history of the IIRIRA refers to the effect of the amendments on removal proceedings and makes no mention of visa petitions, suggesting that Congress did not intend for the provisions of Section 1252 to reach beyond the context of removal proceedings. *See, Shanti, Inc. v. Reno*, 36 F. Supp.2d 1154, 1159 (D. Minn 1999) Furthermore, the limitation of judicial review in Section 1252(a)(2)(B) must be examined within the context of the entire Section")

47. Talwar also contemplated the legislative history:

Section 1252(a)(2)(B) was added to the INA by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (the "IIRIRA"). The legislative history of the IIRIRA refers to the effect of the amendments on removal proceedings and makes no mention of visa petitions, suggesting that Congress did not intend for the provisions of Section 1252 to reach beyond the context of removal proceedings. *See Shanti*, 36 F. Supp.2d at 1159.

48. The logic of this limitation was also discussed in *Mart v. Beebe,* 94 F. Supp.2d 1120, 1123-24 (D. Or. 2000):

> It is true that Congress may remove jurisdiction of one court by substituting an alternative avenue to review. [Section 1252] has this effect on appeals of removal orders. [Section 1252(a)(2)(b)] divests the district court of jurisdiction over removal orders while, at the same time, [Section 1252(b)(2)], provides for review of an order of removal in the Circuit court. However the jurisdiction conferring subsections of [Section 1252] expressly limit Circuit court jurisdiction to review of orders of removal.

49. The court in Mart went on to note that, if the jurisdictional bar applied to "orders not involving removal, then IIRIRA would remove district court jurisdiction without substituting an alternative. It is doubtful that Congress intended to divest every court from jurisdiction to review final INS decisions not involving a removal order." Thus, Section 1252(a)(2)(b)(ii) does preclude subject matter jurisdiction in this case.

50. Notably, although at the time, the Petition in Talwar was denied because there was insufficient precedent to determine the legal definition of a national interest waiver, now, according to It is then true, too, that the prongs set forth by *Matter of Dhanasar* provide the Courts with more than enough guidance to meaningfully review denials. *In re Dhanasar*, 26 I&N Dec. 884, 889 (B.I.A. 2016) there is sufficient law from which to evaluate these determinations of eligibility.

51. Congress did not intend to cut off judicial review here. "From the beginning," the Court has established that "judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." *Bowen v. Mich. Acad. Of Fam. Physicians,* 476 U.S. 667, 670 (1986) (quoting *Abbott Lab'ys v. Gardner,* 387 U.S. 13, 140 (1967)).

52. As a result, there is a "well-settled" and "strong" presumption favoring judicial review of administrative action. *Guerrero-Lasprilla,* 140 S.Ct. at 1069 (quoting *McNary,* 498 U.S. at 496, 498). The Supreme Court has "consistently" applied this presumption to "legislation regarding immigration, and particularly to questions concerning the preservation of federal court jurisdiction." *Kucana,* 558 U.S. at 251; *see also Fong Haw Tan v. Phelan,* 333 U.S. 6, 10 (1948). To that end, the Supreme Court "assumes that 'Congress legislates with the knowledge of' the presumption," and thus requires "'clear and convincing evidence' to dislodge" it. *Kucana,* 558 U.S. at 252 (quoting *Reno v. Cath. Soc. Servs. Inc.,* 509 U.S. 43, 64 (1993)).

53. Relatedly, "[s]eparation-of-powers concerns" also militate "against reading legislation, absent clear statement, to place in executive hands authority to remove cases from the Judiciary's domain."*Id.* at 237. "Article Ill is an inseparable element of the constitutional system of checks and balances" and "preserve [s] the integrity of judicial decisionmaking." *Stern v. Marshall*, 564 U.S. 462, 482, 484 (2011) (citing U.S. Const. art. 3) (internal quotation marks omitted). Consequently, the Supreme Court has found that Article Ill "bar [s] congressional attempts to transfer jurisdiction [to non-Article Ill tribunals] for the purpose of emasculating constitutional courts and thereby preventing the encroachment or aggrandizement of one branch at the expense of the other." *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 850 (1986) (alteration in original) (internal quotation marks omitted).

54. Against this backdrop, "it is most unlikely that Congress intended to foreclose all forms of meaningful judicial review" in 1252(a)(2)(B)(ii). *McNary*, 498 U.S. at 496 (emphasis added). Doing so would leave an individual aggrieved by an incorrect nondiscretionary determination with "no remedy, no appeal to the laws of his country." *United States v. Nourse*, 34 U.S. 8, 9 (1835) (Marshall, c.J.). At the same time, it would deny Article Ill courts

"supervisory authority" to check that nondiscretionary determinations are correct, and to provide administrative adjudicators consistent guidance on such determinations going forward. *Wellness Int'l Network, Ltd. v. Sharif,* 575 U.S. 665, 678 (2015). And it would do so in a particularly arbitrary manner, allowing judicial review of visa petitions denied outright on predicate nondiscretionary grounds like the sham-marriage bar but not visa decisions later revisited and revoked on the very same basis.

55. This case illustrates why 1252(a)(2)(B)(ii) should not be read to foreclose Article Ill review of agency determinations that in any way touch upon the forms of relief specified therein. As in Talwar, Plaintiff does not seek review of a denial of adjustment of status (see, id.), *See, Talwarv. U.S. Immigration and Naturalization*, 00 Civ. 12.66 (JSM), Plaintiff's case is not barred.[4]

## **CAUSE OF ACTION**

56. The Plaintiff seeks relief under the Administrative Procedure Act (APA), 5 U.S.C. § 551, et seq., § 701 et seq., § 706., et seq. The APA "explicitly creates a cause of action for persons…aggrieved by agency action"; *Seafarers Intl. Union v. Coast Guard*, 736 F.2d 19, 25 (2d Cir. 1984); see also, *Shaughnessy v. Pedreiro*, 349 U.S. 48 (1955) (holding that an alien may

---

[4] This logic has been employed by several courts, which have held that Section 1252(a)(2)(B) is limited to the context of removal proceedings. *See, e.g., Burger v. McElroy,* No. 97 Civ. 8775, 1999 WL 203353, at *4 (S.D.N.Y. Apr. 12, 1999); *Mart v. Beebe,* 94 F. Supp.2d 1120, 1123-24 (D. Or. 2000); *Shanti v. Reno,* 36 F. Supp.2d 1151, 1157-60 (D. Minn. 1999). Both *Berger* and *Mart* held that the jurisdictional bar in Section 1252(a)(2)(B)(i) did not apply to adjustment of status denials made outside the context of removal proceedings. *See, generally, Talwar v. U.S. Immigration and Naturalization*, 00 Civ. 12.66 (JSM) (S.D.N.Y. July 9, 2001).

obtain judicial review of an agency action under the APA by an action in a federal district court for a declaratory judgment and injunctive relief); *Bennett v. Spear*, 520 U.S. 154, 117 S. Ct. 1154 (1997). "If review is proper under the APA, the District Court has jurisdiction under 28 USC 1331", *Bowen v Massachusetts*, 487 U.S. 879, 891 n. 16 (1988); and as stated in this court, the "APA provides that a 'reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'" *Brezler v. Mills*, 220 F. Supp. 3d 303, 333 (E.D.N.Y. 2016) (citing 5 U.S.C. § 706(2)(B)).

57. The Supreme Court has upheld the validity of a claim under the APA where a litigant seeks review of an agency decision: "Any person 'adversely affected or aggrieved' by agency action . . . is entitled to judicial review thereof as long as the action is a 'final agency action for which there is no other adequate remedy in a court.'" *Heckler v. Chaney*, 470 U.S. 821, 828 (1985) (quoting 5 U.S.C. §§ 702, 704).

58. Therefore, the January 17, 2024 decision of USCIS on the Plaintiff's I-140 Petition for Alien Worker is the "final agency action" in this matter of which the Plaintiff seeks judicial review.

**VENUE**

59. Venue is proper under 28 USC §1391(e), because this is an action against officers and agencies of the United States in their official capacities, brought in the district where a substantial part of the events or omissions giving rise to the Plaintiff's claim occurred (New York).

60. Defendant Ur M. Jaddou is sued in her official capacity as Director of USCIS, a United States federal agency and resident in this district. Defendant Mayorkas is sued in his

official capacity as Secretary of the Department of Homeland Security ("DHS"), a United States federal agency and resident in this district. Defendant Quarantillo is sued in her official capacity as District Director of USCIS. Defendant Borgen is sued in his official capacity as Director of the USCIS New York City Field Office.

61. The Plaintiff resides in Long Island, New York. The primary actions complained of occurred in this district; this court is therefore the proper venue for this action.

## OTHER ADEQUATE ADMINISTRATIVE REMEDIES

62. Plaintiff has no adequate remedy available to him other than the filing of this complaint. There is no mechanism by which the rejection of the I-140 Petition for Alien Worker with a request for a National Interest Waiver; see 8 CFR §245.2(a)(5)(ii): "No appeal lies from the denial of an application by the Director, but the applicant if not an arriving alien, retains the right to renew his or her application in proceedings under 8 CFR part 240".

63. Although a Motion to Reconsider may be filed with the Administrative Appeals Office (AAO) of USCIS the Plaintiff does not believe that there is a possibility that the agency will overturn its own decision, given the fact that USCIS has already rejected counsel's response to the Notice of Intent to Deny. In addition the AAO will likely take several months to issue a decision during which time the Plaintiffs will not be authorized to work or travel. In McCarthy v Madigan, 503 U.S. 140, 146 (1992) the Supreme Court recognized that in certain cases "the interests of the individual weigh heavily against requiring administrative exhaustion".

64. Exhaustion of administrative remedies is not a requirement under either the INA or the Federal Rules of Civil Procedure (FRCP); see Darby v. Cisneros, 509 U.S. 137 (1993) ("Federal courts do not have the authority to require a plaintiff to exhaust available administrative remedies before seeking judicial review under the APA, where neither the

relevant statute nor agency rules specifically mandate exhaustion as a prerequisite to judicial review. ").

65. Several courts have determined that 8 USC §1252(a)(2)(B)(i) precludes jurisdiction over the denial of an adjustment of status filed with USCIS because the adjustment application can be renewed in removal proceedings, and therefore an adequate administrative remedy exists; see for example Elldakli v Garland, No. 22-20344; U.S. Court of Appeals for the Fifth Circuit; April 4th, 2023. However, it should be noted that the commencement of removal proceedings (and therefore the opportunity to appear before an Immigration Judge) is solely at the whim of DHS and can occur years after the denial or not at all; see 8 CFR §239.1. This is in contrast to the required issuance of a NTA under 8 CFR §208.14(c)(1) where USCIS does not approve an affirmative asylum application; in such cases the alien will get to renew their asylum application in court. The court in Elldakli appears to be under the impression that every alien has such an automatic right to renew an application in Immigration Court once USCIS has denied it and that "another avenue of appeal" exists so that the APA does not apply (Id. at 5).

66. However, (as previously stated) the denial of an adjustment of status application does not necessarily lead to the issuance of a Notice to Appear by DHS. Even if it did, the Plaintiff here has no basis to adjust if USCIS has already revoked the petition on which his adjustment application was based. It is hardly in keeping with the presumption of the availability of judicial review endorsed by the Supreme Court in Kucana v Holder 558 U.S. 233 (2010) to suggest that an alien should be satisfied with a supposed "right to de novo review of that decision in his final removal proceedings" (Elldakli at 6) when those proceedings may never occur and if USCIS has effectively revoked the alien's basis to adjust status in those proceedings.

67. There is therefore no practical mechanism in statute or regulation to allow any further applications with Defendant USCIS regarding this matter, and since removal proceedings have not been instituted there are no opportunities to apply for relief from an Immigration Judge of the Executive Office for Immigration Review (EOIR). Therefore, district court review is the only viable avenue of relief available to Plaintiff.

## PARTIES

68. Plaintiff Lester Eliazer Orellana Umanzor was born on September 17, 1983 in Honduras. He last entered the United States on February 17, 2022. On June 3, 2022, the Plaintiff filed a second preference I-140 Petition for Alien Worker with a request for a National Interest Waiver (NIW) with USCIS, along with an application to adjust status to permanent resident. On September 8, 2022, the Service issued a Request for Evidence ("RFE") which was timely responded by the Plaintiff. Subsequently, after Plaintiff submitted his response to the RFE, on November 27, 2023, the Service issued a Notice of Intent do Deny ("NOID") which was also timely responded by the Plaintiff. Finally, on January 17, 2024, the Service issued a denial decision.

69. The Defendants Ur M. Jaddou, Director, USCIS; Alejandro Mayorkas, Secretary, DHS;  Andrea Quarantillo, New York District Director, U.S. Citizenship and Immigration Services, Michael Borgen, Director USCIS New York Field Office are charged by law with the statutory and regulatory obligation to determine eligibility for adjustment of status to lawful permanent resident, pursuant to INA §§103 and 245, 8 USC §§1103 and 1255, and 8 CFR §§245.2(a)(5)(i) and 245.6.

70. USCIS is the agency of DHS responsible for adjudicating adjustment of status applications under the INA and has the sole authority to do so, pursuant to 8 CFR § 245.2(a)(1)

(requiring any alien who believes she meets the eligibility requirements of Section 245 of the Act to apply to the director having jurisdiction over her place of residence). Therefore, the above-referenced officers are proper defendants in this suit.

## STATEMENT OF THE ISSUES

There are multiple jurisdictional questions and legal questions at issue:

I.  Whether a court of appeals can review constitutional questions; legal questions, questions of procedural deficiency; or questions of abuse of discretion; and

II.  Whether the decision on Plaintiff's application allowed Plaintiff due process of the law; did not follow the correct standards of proof; abused discretion; or failed to follow correct procedures.

III.  Whether Federal Courts can review Denials of National Interest Waiver applications

## STATEMENT OF THE CASE

### I.  FACTUAL AND PROCEDURAL BACKGROUND

71.  Mr. Lester Eliazer Orellana Umanzor, a citizen from Honduras, is a Pilot and Instructor who has strong experience in operating aircraft and delivering training programs. He graduated from the University of the Armed and Air Force in Mexico and thereafter served in the Honduran Air Force as a Military Pilot for seven years. After a successful career in the military, the Petitioner worked at Islena Airlines (Avianca) and Alliance Air (Air India). In addition, he holds two FAA licenses.

72.  As stated, *supra*, on June 3, 2022, the Plaintiff filed a second preference I-140 Petition for Alien Worker with a request for a National Interest Waiver (NIW) with USCIS, along with an application to adjust status to permanent resident. On September 8, 2022, the Service issued a Request for Evidence ("RFE") which was timely responded by the Plaintiff.

Subsequently, after Plaintiff submitted his response to the RFE, on November 27, 2023, the Service issued a Notice of Intent do Deny ("NOID") which was also timely responded by the Plaintiff. Finally, on January 17, 2024, the Service issued a denial decision.

73. On February 14, 2024, the Plaintiff filed a Notice of Appeal and indicated the inclusion of an after-filed brief within 30 days. The brief of appeal was filed on February 29, 2024. However, the AAO issued a denial decision on August 14, 2024.

74. Now, the Plaintiff would like to file a complaint with the U.S. District Court.

## **STANDARD OF REVIEW**

75. If the court finds that it has subject matter jurisdiction over a petition or appeal, the Administrative Procedure Act (APA), 5 U.S.C §701 et. seq. grants the court the power to review an agency's findings of fact and conclusions of law *de novo*; see *Davidson v Glickman*, 169 F.3d 996, 1000 (5th Cir. 1999) ("Under the APA, we review questions of law de novo without deference to the agency's conclusions"); *Wagner v National Transportation Safety Board*, 86 F.3d 928, 930 (9th Cir. 1996) ("Purely legal questions are reviewed de novo"); *Doe v United States*, 821 F.2d 694, 708 (D.C. Cir. 1987) a reviewing court may *"*make an independent determination of the issues" and rule "without deference to the prior administrative proceedings". In *Kucana v Holder,* 558 U.S. 233, 252 (2010) the Supreme Court reiterated that challenges to actions of government agencies have the benefit of a "presumption favoring judicial review," and that this is especially true in the context of "questions concerning the preservation of federal-court jurisdiction." Id. at 251.

76. Although a Motion to Reconsider may be filed with the Administrative Appeals Office (AAO) of USCIS the Plaintiff does not believe that there is a possibility that the agency will overturn its own decision.

77. For all the foregoing reasons, the Plaintiff would like to file a complaint with the U.S. District Court in the Eastern District of New York, as he resides in Roosevelt, NY. Additionally, the Plaintiff needs to request that his I-485 application be put on hold while the Eastern District Court reviews his complaint.

## ARGUMENT

### I. PLAINTIFF SHOULD HAVE BEEN GRANTED THE NIW

78. He is an accomplished commercial pilot and instructor with an extensive background in aviation and education. He holds a bachelor's, master's, an FAA as an airline transport pilot and another FAA license as a private pilot, as well as years of experience as a pilot. He is both a member of the professions holding an advance degree, and a pilot of exceptional ability.

**1. Statement of the National Interest Waiver Eligibility**

**i. The Proposed Endeavor's National Importance**

79. As substantiated by the evidence of record, the Plaintiff is an accomplished commercial airline pilot and instructor with an extensive background in aviation and education. As a seasoned commercial airline pilot, the Plaintiff has accrued substantial expertise in flying various aircraft, ensuring compliance with aviation regulations, and prioritizing passenger safety. This hands-on experience forms the foundation of the proposed endeavor, which aims to contribute significantly to the U.S. aviation industry. Furthermore, the Plaintiff's role as an instructor adds a distinctive dimension to the endeavor. Having trained and mentored aspiring pilots, the Plaintiff possesses a nuanced understanding of the challenges faced by individuals entering the aviation profession. This insight will be instrumental in developing initiatives that enhance new pilots' skills and address broader industry concerns.

80. In addressing the assertion that the Plaintiff's contributions as an instructor at Alliance Aviation *"... appears to be localized and would be of most benefit to his current and future employers"* (Service Denial Decision, page 9), it is crucial to delve into the specifics of his role and the far-reaching impact of his endeavors. Alliance Aviation, a premier aviation training school, attracts aspiring pilots from around the globe. Contrary to the notion of localized impact, the graduates from this institution disperse across national and international aviation sectors, thereby magnifying the influence of the Plaintiff's instructional contributions on a global scale. Furthermore, this assertion ignores the fact that Plaintiff will use his instructional background to teach his colleagues in a Commercial Airline. Many of these pilots go on to fly a myriad of planes within the fleet, transporting passengers to thousands of destinations nationwide and worldwide, and many pilots advance their careers by lateral transfers to other airlines, thus further perpetuating the impact he will make on the industry as a whole.

81. Considering the argument within the framework of the Dhanasar standard and Labor Certification shortage, the case unfolds as a multifaceted narrative. Beyond the immediate concerns of wait times and flight delays, a pivotal consideration is the escalating demand for experienced Captains like Mr. Umanzor in major airlines. The Plaintiff's attainment of the prestigious rank of Captain in a mere seven years (half the customary time frame), coupled with a job offer from Delta Air Lines, underscores his exceptional standing in the field. The shortage of Captain positions, exemplified by a 50% deficit at United Airlines, accentuates the urgency of expediting the processing of individuals with the Plaintiff's caliber and expertise. The denial decision failed to consider this important point previously raised by the Plaintiff. Furthermore, the urgency of the contributions of Plaintiff is a factor that the agency should have considered in deciding to waive the Labor Certification. As shown by the evidence, the urgency is dire indeed.

See *In re Dhanasar*, 26 I&N Dec. 884, 891 (B.I.A. 2016) ("whether the national interest in the foreign national's contributions is sufficiently urgent to warrant forgoing the labor certification process".). The Service failed to consider this urgency and failed to explain why it didn't warrant forgoing the labor certification process in light of the evidence submitted.

82. Turning to the evidentiary landscape, the Plaintiff's Master's Thesis, publications, and contributions to national projects substantiate the potential impact of his endeavors. His thesis was used by the government of Honduras to make crucial decisions about the purchase of fleets and which ended up saving the National Budget a considerable amount of money (around four million dollars). His instrumental role in establishing crucial offices on the national level, implementing safety protocols, devising cost-efficient methods for fueling aircraft fleets, and influencing governmental decisions through publications demonstrates a profound capacity to drive positive transformations in aviation practices.

83. The array of awards and recognitions, notably the Certificate of Recognition by the Mayor at the time of Kirtland, attests to the Plaintiff's excellence in education, emphasizing his potential to leave a lasting imprint in the United States. The offer to serve as a flight instructor for Alliance Aviation, the largest independent aviation training center in the U.S., not only marks a personal triumph but also signifies a substantial contribution to the broader aviation community. As Alliance Aviation trains pilots who will eventually serve various carriers globally, the prospective impact encompasses a vast spectrum, benefiting the public, uniting families, and contributing significantly to the economy and interstate commerce. The vast impact of the Plaintiff's contributions therefore will be undoubtedly felt by many outside of the walls of the employer.

84. In light of this comprehensive evidence, it becomes evident that the Plaintiff's contributions transcend local confines and align closely with national interests, thereby warranting the favorable consideration of his petition. See *Rubin v. Miller*, 478 F. Supp. 3d 499, 506 (S.D.N.Y. 2020) ("defendant's decision denying plaintiff's EB-1 classification petition was arbitrary and capricious, where, in part, defendant overlooked "rather obvious facts" regarding the significance of plaintiff's contributions").

85. The Service denial decision also stated that

The Appellant has not shown that the wider economic effects it is claiming are implications of his proposed endeavor to become a pilot. Because the Appellant has not provided sufficient information or evidence regarding any projected U.S. economic impact or job creation attributable to his future work, it has not shown that benefits to the regional or national economy resulting from his piloting work would reach the level of 'substantial positive economics effects' contemplated by Dhanasar. Id. at 890.

Service denial decision, page 10.

86. However, the argument for the "potential prospective impact" of the Plaintiff's particular undertaking is fortified by references to articles that illuminate key trends and challenges in the aviation industry:

**NOID Response, Exhibit C - Pilots' Reluctance to Assume Captain Roles**[5]**:** The article from Reuters, titled "Focus: United Airlines grapples with pilots avoiding the captain's chair," dated July 18, 2023, sheds light on the current industry dynamics of experienced pilots avoiding Captain positions. This reluctance is crucial, especially in major airlines such as United, grappling with many Captain positions remaining unfilled. The Plaintiff's readiness and

---

[5]*Focus: United Airlines grapples with pilots avoiding the captain's chair*, Rajesh Kumar Singh, July 18, 2023, Reuters, https://www.reuters.com/business/aerospace-defense/united-airlines-grapples-with-pilots-avoiding-captains-chair-2023-07-18/.

exceptional qualifications to step into such roles address this industry-wide challenge, thereby contributing to resolving a systemic issue.

**NOID Response, Exhibit D - Timeline to Attain Captaincy:** The article from flyaeroguard.com, titled "How long does it take to become a Pilot?"**,** outlines the prolonged timeline required for pilots to ascend to the rank of Captain, often spanning 15 years or more. This underscores the significance of experienced individuals like the Plaintiff who have achieved the rank of Captain in an expedited time frame. The Plaintiff's ability to contribute at the highest levels much sooner than the industry norm is a testament to his exceptional skills and the potential to alleviate the shortage of qualified Captains.

**NOID Response, Exhibit E - Economic Impact of Cancelled Flights:** The reports from AirHelp[6] and itij.com[7] highlight the extensive economic repercussions of flight disruptions. The economic toll, estimated at tens of billions of dollars ($30-34 billion) in the USA, underscores the urgency of addressing challenges within the aviation industry to minimize the impact on the economy. The potential reduction in flight disruptions can contribute significantly to economic stability by expediting the placement of highly qualified pilots like Plaintiff.

87. In summary, these articles provide a broader context for the "potential prospective impact" and the national importance of the Plaintiff's particular undertaking, emphasizing how

---

[6]*In numbers: The economic impact of flight disruptions*, Jacqueline Junginer, Oct. 6, 2023, AirHelphttps://www.airhelp.com/en/blog/in-numbers-the-economic-impact-of-flight-disruptions/.

[7]*Flight disruption: the impact on the economy and environment*, Megan Gaen, Sept. 23, 2023, ITIJ, https://www.itij.com/latest/news/flight-disruption-impact-economy-and-environment.

his unique qualifications directly align with industry needs and challenges, ultimately benefiting the aviation sector and the broader U.S. economy.

## 2. Whether the Beneficiary is Well-Positioned to Advance The Proposed Endeavor

88. Regarding Prong 2, the Service denial decision stated that

*"The record lacks evidence of the petitioner's skills that sets him apart from other pilots or instructors. (...) No evidence has been submitted to show the petitioner offers original innovations or that others use his specific strategies in the field as either a pilot or instructor. The evidence is insufficient because it does not establish that the petitioner has impacted the field of endeavor beyond his service to past employers"*.

Service denial decision, page 11.

89. However, contrary to what the denial decision stated, the evidence in the case shows that the Plaintiff has skills that unequivocally set him apart from other pilots and instructors, as well as that he offers original innovations or that others use his specific strategies in the field as either a pilot or instructor, and that he has impacted the field of endeavor beyond his service to past employers.

90. The Plaintiff has a bachelor's degree in aviation, which sets him apart from other pilots who did not obtain such a degree. In addition to a bachelor's degree in aviation, the Plaintiff also has several course and training certificates in the field of aviation; professional licenses, including from the United States (FAA); membership in a professional association; and recognition from other prominent professionals in the field of aviation. This shows he is much further ahead of the curve than the vast majority of foreign national pilots aspiring to work in the United States and thus uniquely well-positioned to advance these important endeavors.

91. Other facts that also set the Plaintiff apart from other pilots or instructors are the evidence demonstrating his recognition by government entities.

92. In 2009, the Plaintiff's contribution in the Conference of Family Coexistence in Tegucigalpa, Honduras, was recognized by the State Secretary – Office of National Defense of the Republic of Honduras. Given his exceptional knowledge in aircraft operation, the Plaintiff was appointed by the General Directorate for Civil Aviation of Tegucigalpa, Honduras, in the investigation mission of an aircraft accident in 2013.

93. Furthermore in 2011, the Plaintiff's high level of training excellence for the International Flight Safety Officer Course at Kirtland Air Force Base in the U.S. was also recognized by Mr. Richard J. Berry, the mayor of Kirtland, New Mexico in the U.S. This recognition attests to the Plaintiff's excellence in education, emphasizing his potential to leave a lasting imprint in the United States. He is not merely claiming that he will make these contributions in the U.S., but rather he is showing the Service that he has already made an impact in aviation education here and will continue to do so if allowed to reside here following the grant of his National Waiver petition.

94. While serving as a military pilot in Honduras Air Force, the Plaintiff has received numerous recognition and certificates of honors due to his significant contribution to the institution:

- "Golden Wings" Honor Certificate

- "Bronze Flying Cross" Honor Certificate

- "Honorable Mention" Certificate in 2006 and 2007

- Diploma of Acknowledgement for:

  1. his valuable collaboration as an instructor during the courses ABAOR and CIAOR

  2. his valuable collaboration and dedication to the teaching process

3. his valuable collaboration provided to the Naval Educative Center as Instructor of the Naval Command Training Academy (ECAMAN)

4. his invaluable support rendered during the Aerial Performance

5. his invaluable support rendered during the 39th OEA (Organization of American States) General Assembly San Pedro Sula, Honduras

6. Officer of the Year 2010

7. Officer of the Year 2012

8. his participation in the first "FAH-USAF Crosstalk"

9. his outstanding performance during the development of the Basic Course of Air Tactic Operations

10. his valuable support and rendered service during the development of the Medical Brigade July 2012

11. his outstanding participation during the training HONCOL

95. Additionally, the Plaintiff has also demonstrated that he can offer original innovations in the field of aviation and that he has impacted the field of endeavor beyond his service to past employers. The Plaintiff's Master's Thesis, which created a project to fuel aircraft fleets more efficiently, was used by the government of Honduras to make crucial decisions about the purchase of fleets and which ended up saving the National Budget a considerable amount of money (around four million dollars). This project was approved by the Honduran National Airforce and by the Honduran Congress, and resulted in the Honduran National Air Force electing to refuel the fleet in accordance with the scientific methods proposed by the Plaintiff in his thesis and not by a new fleet of planes. This resulted in massive savings for the national budget and allowed the government to focus the savings on other endeavors, including

combating drug trafficking. This academic achievement strongly indicates the Plaintiff's capacity to bring fresh perspectives and solutions to industry challenges.

96. The Plaintiff's instrumental role in establishing crucial offices on the national level, implementing safety protocols, devising cost-efficient methods for fueling aircraft fleets, and influencing governmental decisions through publications demonstrates a profound capacity to drive positive transformations in aviation practices.

97. In this way, it is clear that the Plaintiff is a pilot and instructor who has skills that set him apart from other pilots or instructors. It is also demonstrated that the Plaintiff has impacted the field of endeavor beyond his services to past employers and that he can offer original innovations in the field of aviation.

## ii. On Balance, it Would be Beneficial to the United States to Waive the Requirements of a Job Offer and Thus of a Labor Certification

97. Considering the evidence as a whole, the Plaintiff should have received the benefit of the waiver. As demonstrated, his prospective contributions would greatly benefit the United States without adversely affecting the available U.S. work supply, considering the Plaintiff's knowledge and expertise as a commercial airline pilot and instructor.

98. As a seasoned commercial airline pilot, the Plaintiff has accrued substantial expertise in flying various aircraft, ensuring compliance with aviation regulations, and prioritizing passenger safety. This hands-on experience forms the foundation of the proposed endeavor, which aims to contribute significantly to the U.S. aviation industry.

99. Furthermore, the Plaintiff's role as an instructor adds a distinctive dimension to the endeavor. Having trained and mentored aspiring pilots, the Plaintiff possesses a nuanced understanding of the challenges faced by individuals entering the aviation profession. This

insight will be instrumental in developing initiatives that enhance new pilots' skills and address broader industry concerns. It should be noted that these skills and experiences as an instructor will not only be applied to his endeavor as a Flight Instructor, but also as a Commercial Airline pilot (and in the near future, a Captain) as he will train and mentor pilots on a daily basis while promoting safety standards in the aviation industry.

### iii. The Plaintiff can continue to provide immediate economic benefits to the United States. By requiring the labor certification will prevent the Plaintiff from benefiting the U.S. economy.

100. The request to waive the requirement of a job offer, including the associated labor certification, rests on the premise that such a waiver would be unequivocally beneficial to the United States. A careful analysis of the Plaintiff's profile, achievements, and prospective contributions supports the argument that the waiver would serve the national interest in several key aspects.

101. The Plaintiff brings a wealth of experience and skills acquired over 15 years in the aviation industry. With a proven commercial airline pilot and instructor track record, the Plaintiff's expertise is valuable and exceptional. By waiving the job offer requirement, the United States can immediately harness this wealth of experience, avoiding delays associated with a protracted labor certification process.

102. The Plaintiff's background in the Honduran Air Force, where they set up crucial offices, drafted operating policies, and contributed to flight and aviation education, highlights the Plaintiff's commitment to national security. The skills acquired in such a capacity can directly translate into enhancing aviation safety measures in the United States. The nation can benefit

from an individual with a history of contributing to national security by expediting the Plaintiff's entry.

103. The current landscape of the aviation industry, as evidenced by articles on pilots avoiding captain positions (**see NOID Response, Exhibit C**) and the prolonged timeline to become a captain (**see NOID Response, Exhibit D**), underscores the need for experienced professionals. The Plaintiff's potential position as a Captain and the offer from Delta Air Lines Inc. emphasizes the demand for skilled aviators. By facilitating the Plaintiff's swift entry into the workforce, the United States can address pilot shortages, mitigate flight disruptions, and bolster the economy, as illustrated by the economic effects of canceled flights.

105. The Plaintiff's academic achievements, including a Master Thesis that proposed more efficient methods for fueling aircraft fleets **(see NOID Response, Exhibit N)**, demonstrate a commitment to advancing the industry. Waiving the job offer requirement enables the United States to benefit from the Plaintiff's innovative thinking and contributions to fuel efficiency, aligning with global environmental goals.

106. The formal letter of intent from Alliance Aviation **(see NOID Response, Exhibit L)**, a prominent training center, which expressed intent to hire the Plaintiff for a pivotal role as an instructor, signifies a strong alignment with industry values and recognition. The intent letter from Alliance Aviation also emphasizes the Plaintiff's expertise and potential to shape the future of aviation training, endorsing the Plaintiff's capability to contribute significantly to the aviation sector in the U.S. By waiving the job offer requirement, the United States can integrate the Plaintiff seamlessly into the aviation community, leveraging his affiliation for broader industry impact.

107. In the present case, there would be no particular reason to require a labor certification process considering the benefits that the Plaintiff will generate in the future for the U.S. aviation field. Additionally, it would be detrimental to the national interest to require a labor certification because it would potentially prevent the U.S. from immediately benefiting from the Plaintiff's contributions to the U.S. economy. Furthermore, the urgency of his contributions are an important factor when deciding to forego the Labor Certification requirement and the urgency here is dire. Dhanasar has allowed the Service to consider "whether the national interest in the foreign national's contributions is sufficiently urgent to warrant forgoing the labor certification process." *In re Dhanasar*, 26 I&N Dec. 884, 891 (B.I.A. 2016).

108. Therefore, there is no doubt that the Plaintiff's proposed endeavor, as a commercial airline pilot and instructor, is not only meritorious, but nationally important, when considering how much his endeavor may benefit the economy and positively impact the aviation industry through his in-depth expertise in the aviation field. He is well positioned to advance his proposed endeavor as a commercial airline pilot and instructor.

109. On balance, it would be beneficial to the United States to waive the requirements of a job offer and thus of a labor certification process, provided that: the immediate benefits he can generate to the U.S. aviation industry *outweigh the national interest of requiring a labor certification process*; the proven need and high demand for the Plaintiff's expertise demonstrates the *national interest of his contributions is sufficiently urgent*; his proposed endeavor *does not adversely affect U.S. workers* because his expertise is unique and not readily available in the market.

### 3. Conclusion, Plaintiff should have been granted the NIW

110. Following the USCIS last standards and criteria set by USCIS Policy Memorandums, as well as the Adjudicator's Field Manual and AAO precedents, the standard of proof applicable to this petition is the preponderance of the evidence standard. Under the preponderance of evidence standard, a petitioner must establish that he or she, more likely than not, satisfies the qualifying elements.

111. Therefore, it remains established that the Plaintiff has provided relevant, probative, and credible evidence demonstrating, in a more likely than not degree, the assertiveness of the facts sustaining the approval of the present petition. Within the Plaintiff's evidence, there was nothing that could eventually lead to a reasonable doubt of the substantial merit and national importance of his proposed endeavor to the United States. Failure to consider all of these factors is a deviation of the Service's duties and calls for a remand. See *Scripps Coll. v. Jaddou*, 4:23CV3075, at *9 (D. Neb. Dec. 12, 2023) ("USCIS's denial of its I-140 petition must be reversed because it made internally inconsistent findings, imposed novel evidentiary requirements, disregarded relevant factors, and is not supported by substantial evidence.").

## II. PLAINTIFF'S CONSTITUTIONAL DUE PROCESS RIGHTS WERE VIOLATED

### a. PLAINTIFF IS ENTITLED DUE PROCESS OF THE LAW

112. "No person," the Fifth Amendment says, "shall ... be deprived of life, liberty, or property without due process of law." U.S. Const. Amend. 5.Since Yick Wo v. Hopkins[8] in 1886, the Court has recognized that the guarantee of due process is "universal in [its] application, to all persons within the territorial jurisdiction, without regard to differences of . . . Nationality."[9] And

_____

[8]118 U.S. 356 (1886).

[9]*Id*. at 369; *see also* , 344 U.S. 590, 596 n.5 (1953) (explaining that the Fifth Amendment does not "acknowledge[] any distinction between citizens and resident aliens").

since Yamataya v. Fisher[10] in 1903, such a guarantee against "arbitrary power" has been applied in deportation proceedings[11], protecting even noncitizens irrespective of the legality of their initial entry. These principles have been reaffirmed and reapplied and again, the Court has reaffirmed and applied these basic principles for over a century.[12] Although, just as in the criminal context, a particular individual "may have no right to object to a particular result of the sentencing process," they still have "a legitimate interest in the character of the procedure which leads to the imposition of [a] sentence."[13] St. Cyr, too, held as much in the habeas context, acknowledging noncitizens' "right to challenge the Executive's failure to exercise the discretion authorized by law."[14] Here, then, as in parole revocation, sentencing, and appeals as of right,

---

[10] 189 U.S. 86 (1903).

[11] *Id.* at 101 (holding that no "executive officer" may "arbitrarily" deport "an alien who has entered the country, and has become subject . . . to its jurisdiction, and a part of its population").

[12] *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (explaining that "once an alien enters the country," regardless of the legality of their entry, their "legal circumstance changes" under the Due Process Clause and describing the underlying "distinction" — between a noncitizen "who has effected an entry" and a noncitizen who has not — as one that "runs throughout immigration law"). Indeed, the *Thuraissigiam* Court predicated its rejection of a due process challenge on this "century-old rule." *Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1982 (2020).

[13] *Gardner v. Florida*, 430 U.S. 349, 358 (1977) (plurality opinion); *see also* Gerald L. Neuman, *Discretionary Deportation*, 20 Geo. Immigr. L.J. 611, 633–40 (2006) (arguing along these lines).

[14] *INS v. St. Cyr*, 533 U.S. 289, 308 (2001) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954)); *see also id.* at 341 (Scalia, J., dissenting) (emphasis omitted)

even if the Constitution does not require a certain procedure, if the state chooses to provide it, it must comport with due process in doing so.[15]

113.  Thus, Plaintiff has a right to due process under the constitution, including appropriate procedures while deciding their immigration case.

### b. PLAINTIFF WAS NOT GIVEN A FULL AND FAIR OPPORTUNITY TO ADJUDICATE WHETHER HE HAD AN ADVANCED DEGREE

114.  Because Plaintiff holds both a bachelor's and a master's, each of which was determined separately to meet the requirements of the NIW alone, Plaintiff was not aware that this point would be put back in question, nor was his evidence of having a master's degree considered, and thus was not given a full and fair opportunity to prove this point. *See, e.g.Malets v. Garland*, No. 19-4216 (2d Cir. 2023) (holding that not allowing petitioner to present supporting evidence deprives him of a full and fair hearing).

---

(describing the majority's approach as finding a "right to judicial compulsion of the exercise of Executive discretion"). In this sense, a "legitimate claim of entitlement" is created by "placing substantive limitations on official discretion" — here, fact-specific eligibility criteria. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 462 (1989) (quoting *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)).

[15]*See Morrissey v. Brewer*, 408 U.S. 471, 483–484 (1972) (parole revocation); *Townsend v. Burke*, 334 U.S. 736, 741 (1948) (sentencing); *Evitts v. Lucey*, 469 U.S. 387, 393 (1985) (appeals as of right). This disposes, too, of the argument that no due process entitlement can attach to discretionary relief from removal because of its status as a "public right." *Cf. Fong Yue Ting v. United States*, 149 U.S. 698, 713 (1893) (noting that Congress may entrust "the final determination" of "facts" relating to admissibility "to an executive officer").

115. Failing to consider relevant evidence itself a violation of a noncitizen's due process rights. *Shunfu Li v. Mukasey*, 529 F.3d 141, 149 (2d Cir. 2008) (holding that IJ granted insufficient weight to certain evidence and applied the wrong standard of proof); *Zhi Yun Gao v. Mukasey*, 508 F.3d 86, 87-88 (2d Cir. 2007) (holding that the Board must show that it has considered any evidence that materially bears on the alien's claim.); *Li Zu Guan v. INS*, 453 F.3d 129 (2d Cir. 2006) (granting review for inconsistent consideration of evidence); *Yan Chen v. Gonzales*, 417 F.3d 268, 272, 275 (2d Cir. 2005) (noting that the Board is permitted to reasonably discount evidence; however the Board may not simply overlook evidence.);*see also, Poradisova v. Gonzales*, 420 F.3d 70 (2d Cir. 2005) (noting that the alien's supporting evidence should not be overlooked); *Tian-Yong Chen v. INS*, 359 F.3d 121 (2d Cir. 2004) (noting that the Board cannot overlook the alien's evidence and testimony); *Indradjaja v. Holder*, 737 F.3d 212 (2d Cir. 2013) (noting that material evidence should not be overlooked).

116. The USCIS uses a subscription-based service called EDGE to determine the equivalency of advanced degrees from abroad. *See, generally*, NOID &Decision. Plaintiff was told that USCIS's EDGE system agreed that Plaintiff's bachelor's degree was equivalent to a bachelor's degree in the United States and also, separately, that his master's degree was equivalent to that of a United States master's. *See, generally*, NOID. Therefore, USCIS recognized the Plaintiff's eligibility for EB-2 as a member of a profession holding advanced degree.

117. Thus, given that it was already adjudicated and he was told it was "granted," (NOID at 1) ("While the RFE granted that the Plaintiff qualifies as a member of the professions holding an advanced degree…"), Plaintiff was not offered an opportunity to re-adjudicate the point. Unfortunately, the NIW was then denied on this exact ground that was "granted" to him in the

NOID. The denial noted that he did not have a bachelor's, but the denial neither mentioned nor considered the master's (see, generally, *id.)*. This is a violation of his due process rights.

118. Although Plaintiff does not contend he has a constitutional right to a specific result in his case, he was already granted a benefit and then the benefit was taken away without an opportunity to contest, and without the material evidence being considered, and therefore he was denied an opportunity for a full and fair hearing.

### c.  CONCLUSION

119. Because a lack of due process is a question of constitutional law, this court has jurisdiction to reviewde novo and consider the master's degree, as discussed, *supra*, independently reviewing the evidence without deference to the prior determination. *See, e.g. United States v. First City Nat'l Bank*, 386 U.S. 361, 368 (1967) (stating that de novo review requires "that the court should make an independent determination of the issues"); *Matter of Kasinga,* 21 I&N Dec. 357, 365 (BIA 1996) (describing de novo review as "reviewing the appellate record anew").

### III. <u>**AAO MISAPPLIED THE LAW AND PROCEDURES**</u>

### d.  MISAPPLICATION OF THE NIW STANDARDS

120. The AAO also committed errors in the NIW analysis itself, which cannot be forgiven under *Patel.* Further, the question of whether the correct standards of proof were applied is a question of law that is reviewed, de novo.*See, e.g. Wu Lin v. Lynch*, 813 F.3d 122, 129-31 (2d Cir. 2016) (reviewing de novo and remanding for correct application of clear error review); *Alom v. Whitaker*, 910 F.3d 708, 713-14 (2d Cir. 2018) (remanding because "the BIA's commentary implies that it applied only clear error review to the entirety of the good faith

marriage determination . . . and did not contemplate its authority to reweigh the evidence or to conclude that the IJ's legal conclusions were insufficient").

121. The AAO arbitrarily held that Plaintiff did not meet the definition of Advanced Degree, despite the bachelor's and master's. However, this means that the AAO did not consider the alternative, the Exceptional Ability prong, and thus the AAO skipped a step in their application of procedure. *In re Dhanasar*, 26 I&N Dec. 884, 886 (B.I.A. 2016) ("USCIS may grant a national interest waiver as a matter of discretion if the petitioner satisfies both subparagraphs (A) and (B). Thus, a petitioner who seeks a 'national interest waiver' must first satisfy subparagraph (A) by demonstrating that the beneficiary qualifies as a member of the professions holding an advanced degree ***or as an individual of exceptional ability***. *See* 8 C.F.R. § 204.5(k)(1)-(3) (providing definitions and considerations for making such determinations)").

122. Here, the Plaintiff has satisfied all three options – he holds a bachelor's with more than five year's experience, he also holds a master's, and he has separately demonstrated exceptional ability. So he is qualified and eligible for the NIW.

123. By not considering these three pathways to eligibility for the NIW, the AAO misapplied the NIW procedures.Application of procedures is a question of law that is reviewable by this court.Even if the court determines that this is a mixed question of law and fact, this will still be reviewed de novo. The Supreme Court has described a mixed question of fact and law is one "in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated." *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19 (1982). In such cases, where the facts are undisputed and the reviewer merely must determine whether those undisputed facts meet the relevant legal standard, the BIA

must apply de novo review. *See*, *Id.* (discussing review of legal questions); *accord Myrie v. Att'y Gen.*, 855 F.3d 509, 516 (3d Cir. 2017) (stating that in cases involving mixed questions, "the Board should review without deference the ultimate conclusion that the findings of fact do not meet the legal standard")

124. The BIA has indicated that "question of 'judgment'" has the same meaning as "mixed question of fact and law." *Matter of V-K-*, 24 I&N Dec. 500, 502 (BIA 2008), vacated on other grounds by *Matter of Z-Z-O-*, 26 I&N Dec. 586, 590 (BIA 2015). However, this occurred in the context of determining that the relevant mixed question was subject to de novo review. The BIA must review questions of judgment de novo, see 8 C.F.R. § 1003.1(d)(3)(ii), while the BIA may apply a bifurcated standard of review to mixed questions of law and fact – reviewing the facts for clear error and the law de novo.

### e. MISAPPLICATION OF THE NIW STANDARD OF PROOF

125. The standard of proof for the NIW is also a preponderance of the evidence, Decision at 1 ("The petitioner bears the burden of proof and must establish her eligibility by a preponderance of the evidence). A preponderance of the evidence means that it is more likely than not that the beneficiary is fully qualified for the benefit sought. In the present case, USCIS approved that the Plaintiff qualifies for the requested classification as a member of the professions holding an advanced degree. Also, the Service recognized that the Plaintiff's proposed endeavor has substantial merit. Regarding the Advanced Degree, the Service understood that Plaintiff held a master's degree which was equivalent to a master's degree in the United States (NOID at 3 – 4) ("EDGE provides that a master's degree in Honduras is comparable to a master's degree in the United States."). USCIS also determined that his bachelor's degree was also equivalent to a United States bachelor's degree, Service Denial

Decision, pages 3 and 8 (finding that "he qualifies for the second preference visa classification with the foreign equivalent of a U.S. Baccalaureate degree plus at least five years of progressive, post-baccalaureate experience in the specialty.")

126. As discussed, *supra*, the AAO determined that Plaintiff did not hold an advanced degree. However, the AAO did not consider the entire record and, accordingly, the decision was not based on the correct standard of proof of a preponderance of the evidence, which is a reviewable question of law.

### f. AAO APPEAL DE NOVO BUT DID NOT CONSIDER THE MASTER'S DEGREE

127. The AAO considers the entire record, de novo. (see, Decision at 1). This means that the standard of review includes considering all of the evidence.

128. Plaintiff offered proof that he had and was adjudicated to have, both a bachelor's and a master's. The master's degree is undisputed. The AAO, however, determined that because the Plaintiff did not have a bachelor's degree, they did not have an advanced degree. They made no mention of the master's degree, which means they did not consider the entire record de novo, and thus AAO did not apply the correct evidentiary standard.

129. Because incorrect procedures and standard of proof is a question of law, this court has jurisdiction to review. *Paucar v. Garland*, No. 21-6043 (2d Cir. 2023) (vacating a decision of the BIA "because the BIA overlooked and mischaracterized material evidence" and for failure to apply the correct law); *Doe v. Sessions*, 886 F.3d 203, 211 (2d Cir. 2018) ("[T]he agency may commit an error of law if important facts have been totally overlooked and others have been seriously mischaracterized." (internal quotation marks omitted))

130. And this court should reverse if material evidence was overlooked or not considered. *Shunfu Li*, 529 F.3d at149 (holding that IJ granted insufficient weight to certain evidence and applied the wrong standard of proof); *Zhi Yun Gao*, 508 F.3d at 87-88 (holding that the Board must show that it has considered any evidence that materially bears on the alien's claim.); *Li Zu Guan*, 453 F.3d 129 (granting review for inconsistent consideration of evidence); *Yan Chen*, 417 F.3d at 272, 275 (noting that the Board is permitted to reasonably discount evidence; however the Board may not simply overlook evidence.); *see also, Poradisova*, 420 F.3d 70 (noting that the alien's supporting evidence should not be overlooked); *Tian-Yong Chen*, 359 F.3d 121(noting that the Board cannot overlook the alien's evidence and testimony); *Indradjaja*, 737 F.3d 212 (noting that material evidence should not be overlooked).

## IV. **AAO DECISION WAS INCONSISTENT AND ARBITRARY**

131. USCIS officials are given discretion in their decisions. Although discretion is not a one-size-fits-all, bright-line rule, their discretion is bound by specific parameters and factors that must be considered. Not considering these factors, or not giving these factors the correct, statutorily prescribed weight, amounts to a decision that is not based on discretion. It is then an abuse of discretion to make a decision that is arbitrary, inconsistent, or dependent on intangible or imagined circumstances[16]or when a "decision rests on an error of law, inexplicably departs from establishedpolicies, or is so devoid of any reasoning as to raise the concern that it acted in an arbitrary or capricious manner." *Paucar v. Garland*, No. 21-6043 (2d Cir. 2023); *Ke Zhen Zhao v. U.S. Dep't of Just.*, 265 F.3d 83, 93 (2d Cir. 2001); *Freire v. Holder*, 647 F.3d 67, 69 (2d

---

[16] For a more thorough treatment of the weighing of discretionary factors, see Volume 1, General Policies and Procedures, Part E, Adjudication, Chapter 8, Discretionary Analysis, Section C, Adjudicating Discretionary Benefits, Subsection 3, Weighing Factors [1 USCIS-PM E.8(C)(3)].

Cir. 2011) (per curiam).*See, also,* USCIS Policy Manual, Home Policy Manual Volume 7 – Adjustment of Status Part A - AOS Policies and Procedures Chapter 10 - Legal Analysis and Use of Discretion, A. Burden of Proof and Standard of Proof, available at, https://www.uscis.gov/policy-manual/volume-7-part-a-chapter-10.

132. Here, the AAO's decision was both arbitrary as not considering the master's, but also inconsistent with the USICS official's determinations. These are questions of law that are reviewed de novo, as discussed, *supra*, independently reviewing the evidence without deference to the prior determination.

### g. AAO DECISION INCONSISTENT WITH THE DECISION OF THE USCIS OFFICIAL

133. As discussed, supra, the USCIS reviewed the entire evidence packet and, using the EDGE system, determined that Plaintiff held an advanced degree, and also a bachelor's degree with more than five years of experience, as well as other qualifications.

134. The AAO, conversely, stated that this was not the case, which is inconsistent with the findings of the USCIS official who used the same evidence and same EDGE system. This decision should be reversed because it is not supported by adequate reasoning. *Ivanishvili v. U.S. Dep't of Justice*, 433 F.3d 332, 337 (2d Cir. 2006) (holding that if a decision's "reasoning proves inadequate for denying a petitioner's claim, [the Court] will not hesitate to reverse.")

135. Inconsistent decisions do not follow the statutory requirements and are questions of law that are reviewable in court.

### h. AAO DECISION ARBITRARILY IGNORED THE MASTER'S DEGREE

136. The AAO based its decision, apparently, solely on the bachelor's degree while ignoring the master's. The AAO has access to, and uses, the entire record in its decision as it

does its review de novo (see, Decision at 1). Given that the Applicant had both a bachelor's and a master's degree, the AOO misapplied the correct standard of proof – by a preponderance of the evidence –and arbitrarily ignored the master's. This is erroneous and an abuse of discretion. *See, e.g., Poradisova,* 420 F.3d at 77 (explaining that generally "some indication that the IJ considered material evidence supporting a petitioner's claim" is required); *Yan Chen,* 417 F.3d at 272 (criticizing decision for failure to take into account relevant evidence); *Cao He Lin v. Dep't of Justice,* 428 F.3d 391, 395 (2d Cir. 2005) (explaining that where the IJ has made serious errors, the decision is vacated and remanded "because [the court] cannot determine whether the IJ would have reached the same conclusion had she not erred"); *Yang v. Board of Immigration Appeals*, 440 F.3d 72 (2d Cir. 2006) (holding IJ erred by failing to address "evidence specifically indicating that petitioner's" argument had merit)

137. Indeed, the Board appears to have "failed to consider the arguments at the heart of the … clai[m]" – that petitioner held a master's. *Jourbina v. Holder*, 532 F. App'x 1, 2 (2d Cir. 2013) (vacating and remanding BIA decision for failing to consider material evidence). This decision is not supported by the evidence nor the correct legal standards,and should be vacated. *See, e.g., Paucar v. Garland*, No. 21-6043 (2d Cir. 2023); *Barco-Sandoval v.Gonzales*, 516 F.3d 35, 39 (2d Cir. 2007) (holding that a "constitutional claim" or "question of law" may "arise . . . in fact- finding which is flawed by an error of law" or "where a discretionary decision is argued to be an abuse of discretion because it was made without rational justification or based on a legally erroneous standard" (internal quotation marks omitted)); *Doe v. Sessions*, 886 F.3d 203, 211 (2d Cir. 2018) (holding that "the agency may commit an error of law if important facts have been totally overlooked and others have been seriously mischaracterized" (internal quotation marks omitted)).

137. Arbitrary decisions do not follow the statutory requirements and are questions of law that are reviewable in court.

### i. AAO DECISION ARBITRARILY IGNORED THE AVENUE OF ELIGIBILITY FOR EXCEPTIONAL ABILITY

138. The AAO arbitrarily held that Plaintiff did not meet the requirements of being a member of the professions which require an advanced degree, despite the bachelor's and master's. However, this means that the AAO did not consider the alternative, the Exceptional Ability prong, and thus the AAO arbitrarily skipped a step in their application of procedure. *In re Dhanasar*, 26 I&N Dec. 884, 886 (B.I.A. 2016) ("USCIS may grant a national interest waiver as a matter of discretion if the petitioner satisfies both subparagraphs (A) and (B). Thus, a petitioner who seeks a "national interest waiver" must first satisfy subparagraph (A) by demonstrating that the beneficiary qualifies as a member of the professions holding an advanced degree **or as an individual of exceptional ability**. *See* 8 C.F.R. § 204.5(k)(1)-(3) (providing definitions and considerations for making such determinations)").

139. Plaintiff's exceptional ability, beyond the degrees, was arbitrarily ignored. Arbitrary decisions do not follow the statutory requirements and are questions of law that are reviewable in court.

### V. CONCLUSION: THIS COURT HAS JURISDICTION TO REVIEW

140. Because incorrect procedures and standard of proof is a question of law, this court has jurisdiction to review.

### CONCLUSION

For all the foregoing reasons, the Court should GRANT REVIEW the Plaintiff's claims, find that the Defendants violated the APA by engaging in conduct which was "arbitrary and capricious," and ORDER the agency to reconsider its decision.

Respectfully submitted this 14th day of November, 2024

/S/ Felipe Alexandre

FELIPE ALEXANDRE, ESQ.

Attorney for the Plaintiff